Justice THOMAS
delivered the opinion of the Court.
The Federal Bankruptcy Code preempts state bankruptcy laws that enable insolvent municipalities to restructure their debts over the objections of creditors and instead requires municipalities to restructure such debts under Chapter 9 of the Code. 11 U.S.C. § 903(1). We must decide whether Puerto Rico is a “State” for purposes of this pre-emption provision. We hold that it is.
The Bankruptcy Code has long included Puerto Rico as a “State,” but in 1984 Congress amended the definition of “State” to exclude Puerto Rico “for the purpose of defining who may be a debtor under chapter 9.” Bankruptcy Amendments and Federal Judgeship Act, § 421(j)(6), 98 Stat. 368, now'codified at 11 U.S.C. § 101(52). Puerto Rico interprets this amended definition to mean that Chapter 9 no longer applies to it, so it is no longer a “State” for purposes of Chapter 9’s pre-emption provision. We hold that Congress’ exclusion of Puerto Rico from the definition of a “State” in the amended definition does not sweep so broadly. By excluding Puerto Rico “for the purpose of defining who may be a debtor under chapter 9,” § 101(52) (emphasis added), the Code prevents Puer-to Rico from authorizing its municipalities to seek Chapter 9 relief. Without that authorization, Puerto Rico’s municipalities cannot qualify as Chapter 9 debtors. § 109(c)(2). But Puerto Rico remains a “State” for other purposes related to Chapter 9, including that chapter’s preemption provision. That provision bars Puerto Rico from enacting its own municipal bankruptcy scheme to restructure the debt of its insolvent public utilities companies.
I
A
Puerto Rico and its instrumentalities are in the midst of a fiscal crisis. More than $20 billion of Puerto Rico’s climbing debt is shared by three government-owned public utilities companies: the Puerto Rico Electric Power Authority, the Puerto Rico Aqueduct and Sewer Authority, and the Puerto Rico Highways and Transportation Authority. For the fiscal year ending in 2013, the three public utilities operated with a combined deficit of $800 million. The Government Development Bank for Puerto Rico (Bank) — the Commonwealth’s government-owned bank and fiscal agent— has previously provided financing to enable the utilities to continue operating without defaulting on their debt obligations. But the Bank now faces a fiscal crisis of its own. As of fiscal year 2013, it had loaned nearly half of its assets to Puerto Rico and its public utilities. Puerto Rico’s access to capital markets has also been severely compromised since ratings agencies downgraded Puerto Rican bonds, including the utilities’, to noninvestment grade in 2014.
Puerto Rico responded to the fiscal crisis by enacting the Puerto Rico Corpora *1943 tion Debt Enforcement and Recovery Act (Recovery Act) in 2014, which enables the Commonwealth’s public utilities to implement a recovery or restructuring "plan for their debt. 2014 Laws P.R. p. 371. See generally McGowen, Puerto Rico Adopts A Debt Recovery Act For Its Public Corporations, 10 Pratt’s J. Bkrtcy. Law 453 (2014). Chapter 2 of the Recovery Act creates a “consensual” debt modification procedure that permits the public utilities to propose changes to the terms of the outstanding debt instruments, for example, changing the interest rate or the maturity date of the debt. 2014 Laws P. R., at 428-429. In conjunction with the debt modification, the public utility must also propose a Bank-approved recovery plan to bring it back to financial self-sufficiency. Ibid. The debt modification binds all creditors so long as those holding at least 50% of affected debt participate in (or consent to) a vote regarding the modifications, and the participating creditors holding at least 75% of affected debt approve the modifications. Id., at 430. Chapter 3 of the Recovery Act, on the other hand, mirrors Chapters 9 and 11 of the Federal Bankruptcy Code by creating a court-supervised restructuring process intended to offer the best solution for the broadest group of creditors. See id., at 448-449. Creditors holding two-thirds of an affected class of debt must participate in the vote to approve the restructuring plan, and half of those participants must agree to the plan. Id., at 449.
B
A group of investment funds, including the Franklin California Tax-Free Trust,' and BlueMountain Capital Management, LLC, brought separate suits against Puer-to Rico and various government officials, including agents of the Bank, to enjoin the enforcement of the Recovery Act. Collectively, the plaintiffs hold nearly $2 billion in bonds issued by the Electric Power Authority, one of the distressed utilities. The complaints alleged, among other claims, that the Federal Bankruptcy Code prohibited Puerto Rico from implementing its own municipal bankruptcy scheme.
The District Court consolidated the suits and ruled in the plaintiffs’ favor on their pre-emption claim. 85 F.Supp.3d 577 (P R 2015). The court concluded that the preemption provision in Chapter 9 of the Federal Bankruptcy Code, 11 U.S.C. § 903(1), precluded Puerto Rico from implementing the Recovery Act and enjoined its enforcement. 85 F.Supp.3d, at 601, 614.
The First Circuit affirmed. 805 F.3d 322 (2015). The court examined the 1984 amendment to the definition of “State” in the Federal Bankruptcy Code, which includes Puerto Rico as a “State” for purposes of the Code “ ‘except for the purpose of defining who may be a debtor under chapter 9.’ ” Id., at 330-331 (quoting § 101(52); emphasis added). The court concluded that the amendment did not remove Puerto Rico from the scope of the pre-emption provision and held that the pre-emption provision barred the Recovery Act. Id., at 336-337. The court opined that it was up to Congress, not Puerto Rico, to decide when the government-owned companies could seek bankruptcy relief. Id., at 345.
We granted the Commonwealth’s petitions for writs of certiorari. 577 U.S. -, 136 S.Ct. 582, 193 L.Ed.2d 465 (2015).*
*1944 II
These cases require us to parse three provisions of the Bankruptcy Code: the “who may be a debtor” provision requiring States to authorize municipalities to seek Chapter 9 relief, § 109(c), the pre-emption provision barring States from enacting their own municipal bankruptcy schemes, § 903(1), and the definition of “State,” § 101(52). We first explain the text and history of these provisions. We then conclude that Puerto Rico is still a “State” for purposes of the pre-emption provision and hold that this provision pre-empts the Recovery Act.
A
The Constitution empowers Congress to establish “uniform Laws on the subject of Bankruptcies throughout the United States.” Art. I, § 8, cl. 4. Congress first exercised that power by enacting a series of temporary bankruptcy Acts beginning in 1800, which gave way to a permanent federal bankruptcy scheme in 1898. See An Act To Establish a Uniform System of Bankruptcy Throughout the United States, 30 Stat. 544; Hanover Nat. Bank v. Moyses, 186 U.S. 181, 184, 22 S.Ct. 857, 46 L.Ed. 1113 (1902). But Congress did not enter the field of municipal bankruptcy until 1933 when it enacted the precursor to Chapter 9, a chapter of the Code enabling an insolvent “municipality,” meaning a “political subdivision or public agency or instrumentality of a State,” 11 U.S.C. § 101(40), to restructure municipal debts. See McConnell & Picker, When Cities Go Broke: A Conceptual Introduction to Municipal Bankruptcy, 60 U. Chi. L.Rev. 425, 427, 450-451 (1993).
Congress has tailored the federal municipal bankruptcy laws to preserve the States’ reserved powers over their municipalities. This Court struck down Congress’ first attempt to enable the States’ political subdivisions to file for federal bankruptcy relief after concluding that it infringed the States’ powers “to manage their own affairs.” Ashton v. Cameron County Water Improvement Dist. No. One, 298 U.S. 513, 531, 56 S.Ct. 892, 80 L.Ed. 1309 (1936). Congress tried anew in 1937, and the Court upheld the amended statute as an appropriate balance of federal and state power. See United States v. Bekins, 304 U.S. 27, 49-53, 58 S.Ct. 811, 82 L.Ed. 1137 (1938). Critical to the Court’s constitutional analysis was that the State had first authorized its instrumentality to seek relief under the federal bankruptcy laws. See id., at 47-49, 53-54, 58 S.Ct. 811.
Still today, the provision of the Bankruptcy Code defining who may be a debtor under Chapter 9, which we refer to here as the “gateway” provision, requires the States to authorize their municipalities to seek relief under Chapter 9 before the municipalities may file a Chapter 9 petition:
“§ 109. Who may be a debtor
“(c) An entity may be a debtor under chapter 9 of this title if and only if such entity—
“(1) is a municipality;
“(2) is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter — ”
The States’ powers are not unlimited, however. The federal bankruptcy laws changed again in 1946 to bar the States *1945 from enacting their own municipal bankruptcy schemes. The amendment overturned this Court’s holding in Faitoute Iron & Steel Co. v. Asbury Park, 316 U.S. 502, 507-509, 62 S.Ct. 1129, 86 L.Ed. 1629 (1942) (rejecting contention that Congress occupied the field of municipal bankruptcy law). In Faitoute, the Court held that federal bankruptcy laws did not pre-empt New Jersey’s municipal bankruptcy scheme, which required municipalities to seek relief under state law before resorting to the federal municipal bankruptcy scheme. Ibid. To override Faitoute, Congress enacted a provision expressly preempting state municipal bankruptcy laws. Act of July 1,1946, 60 Stat. 415.
The express pre-emption provision, central to these cases, is now codified with some stylistic changes in § 903(1):
“§ 903. Reservation of State power to control municipalities
“This chapter does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality, including expenditures for such exercise, but—
“(1) a State law prescribing a method of composition of indebtedness of such municipality may not bind any creditor that does not consent to such composition; and
“(2) a judgment entered under such a law may not bind a creditor that does not consent to such composition.”
The third provision of the Bankruptcy Code at issue is the definition of “State,” which has included Puerto Rico since it became a Territory of the United States in 1898. The first Federal Bankruptcy Act, also enacted in 1898, defined “States” to include “the Territories, the Indian Territory, Alaska, and the District of Columbia.” 30 Stat. 545. When Congress reco-dified the bankruptcy laws to form the Federal Bankruptcy Code in 1978, the definition of “State” dropped out of the definitional section. See generally Bankruptcy Reform Act, 92 Stat. 2549-2554. Congress then amended the Code to reincorporate the definition of “State” in 1984. § 421, 98 Stat. 368-369, now codified at § 101(52). The amended definition includes Puerto Rico as a State for purposes of the Code with one exception:
“§ 101. Definitions
“(52) The term ‘State’ includes the District of Columbia and Puerto Rico, except for the purpose of defining who may be a debtor under chapter 9 of this title.”
B
It is our task to determine the effect of the amended definition of “State” on the Code’s other provisions governing Chapter 9 proceedings. We must decide whether, in light of the amended definition, Puerto Rico is no longer a “State” only for purposes of the gateway provision, which requires States to authorize their municipalities to seek Chapter 9 relief, or whéther Puerto Rico is also no longer a “State” for purposes of the pre-emption provision.
The parties do not dispute that, before 1984, Puerto Rico was a “State” for purposes of Chapter 9’s pre-emption provision. Accordingly, before 1984, federal law would have pre-empted the Recovery Act because it is a “State law prescribing a method of composition of indebtedness” for Puerto Rico’s instrumentalities that would bind ' nonconsenting creditors, § 903(1).
The parties part ways, however, in deciphering how the 1984 amendment to the definition of “State” affected the pre-emp *1946 tion provision. Petitioners interpret the amended definition of “State” to exclude Puerto Rico altogether from Chapter 9. If petitioners are correct, then the pre-emption provision does not apply to them. Puerto Rico, in other words, may enact its own municipal bankruptcy scheme without running afoul of the Code. Respondents, on the other hand, read the amended definition narrowly. They contend that the definition precludes Puerto Rico from “specifically authoriz[ing]” its municipalities to seek relief, as required by the gateway provision, § 109(c)(2), but that Puerto Rico is no less a “State” for purposes of the pre-emption provision than the other “State[s],” as .that term is defined in the Code. If respondents are correct, then the pre-emption provision applies to Puerto Rico and bars it from enacting the Recovery Act.
Respondents have the better reading. We hold that Puerto Rico is still a “State” for purposes of the pre-emption provision. The 1984 amendment precludes Puerto Rico from authorizing its municipalities to seek relief under Chapter 9, but it does not remove Puerto Rico from the reach of Chapter 9’s pre-emption provision.
1
 The plain text of the Bankruptcy Code begins and ends our analysis. Resolving whether Puerto Rico is a “State” for purposes of the pre-emption provision begins “with the language of the statute itself,” and that “is also where the inquiry should end,” for “the statute’s language is plain.” United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). And because the statute “contains an express preemption clause,” we do not invoke any presumption against pre-emption but instead “focus on the plain wording of the clause, which necessarily contains the best evidence of Congress’ pre-emptive intent.” Chamber of Commerce of United States of America v. Whiting, 563 U.S. 582, 594, 131 S.Ct. 1968, 179 L.Ed.2d 1031 (2011) (internal quotation marks omitted); see also Gobeille v. Liberty Mut. Ins. Co., 577 U.S. -,-, 136 S.Ct. 936, 946, 194 L.Ed.2d 20 (2016).
The amended definition of “State” excludes Puerto Rico for the single “purpose of defining who may be a debtor under chapter 9 of this title.” § 101(52) (emphasis added). That exception unmistakably refers to the gateway provision in § 109, titled “who may be a debtor.” Section 109(c) begins, “An entity may be a debtor under chapter 9 of this title if and only if ....” § 109(c). We interpret Congress’ use of the “who may be a debtor” language in the amended definition of “State” to mean that Congress intended to exclude Puerto Rico from this gateway provision delineating who may be a debtor under Chapter 9. See, e.g., Sullivan v. Stroop, 496 U.S. 478, 484, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990) (reading same term used in different parts of the same Act to have the same meaning); see also Northcross v. Board of Ed. of Memphis City Schools, 412 U.S. 427, 428, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973) (per curiam) (“[Similarity of language ... is ... a strong indication that the two statutes should be interpreted pari passu ”). Puerto Rico, therefore, is not a “State” for purposes of the gateway provision, so it cannot perform the single function of the “State[s]” under that provision: to “specifically authoriz[e]” municipalities to seek Chapter 9 relief. § 109(c). As a result, Puerto Rico’s municipalities cannot satisfy the requirements of Chapter 9’s gateway provision until Congress intervenes.
The amended definition’s use of the term “defining” also confirms our conclusion that the amended definition excludes *1947 Puerto Rico as a “State” for purposes of the gateway provision. The definition specifies that Puerto Rico is not a “State ... for the purpose of defining who may be a debtor under Chapter 9.” § 101(52) (emphasis added). To “define” is “to decide upon,” 4 Oxford English Dictionary 388 (2d ed. 1989), or “to settle” or “to establish or prescribe authoritatively,” Black’s Law Dictionary ,380 (5th ed.1979). As discussed, a State’s role under the gateway provision is to do just that: The State must define (or “decide upon”) which entities may seek Chapter 9 relief. Barring Puerto Rico from “defining who may be a debtor under chapter 9” is tantamount to barring Puerto Rico from “specifically authorizing” which municipalities may file Chapter 9 petitions under the gateway provision. The amended definition of “State” unequivocally excludes Puerto Rico as a “State” for purposes of the gateway provision.
The text of the definition extends no further. The exception excludes Puerto Rico only for purposes of the gateway provision. Puerto Rico is no less a “State” for purposes of the pre-emption provision than it was before Congress amended the definition. The Code’s pre-emption provision has prohibited States and Territories defined as “States” from enacting their own municipal bankruptcy schemes for 70 years. See 60 Stat. 415 (overturning Fait-oute, 316 U.S., at 507-509, 62 S.Ct. 1129). Had Congress intended to “alter th[is] fundamental detai[l]” of municipal bankruptcy, we would expect the text of the amended definition to say so. Whitman v. American Trucking Assns., Inc., 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001). Congress “does not, one might say, hide elephants in mouseholes.” Ibid.
2
The dissent, adopting many of petitioners’ arguments, reads the amended definition to say what it does not — that “for the purpose of ... chapter 9,” Puerto Rico is not a State. The arguments in support of that capacious reading are unavailing.
First, the dissent agrees with petitioners’ view that the exclusion of Puerto Rico as a “State” for purposes of the gateway provision effectively removed Puerto Rico from all of Chapter 9. See post, at 1952-1953 (opinion of SOTOMAYOR, J.). To be sure, § 109(c) and the surrounding subsections serve an important gatekeep-ing role. Those provisions “specify who qualifies — and who does not qualify — as a debtor under the various chapters of the Code.” Toibb v. Radloff, 501 U.S. 157, 161, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). For instance, a railroad must file under Chapter 11, not Chapter 7, §§ 109(b)(1), (d), whereas only “family farmer[s] or family fisherm[e]n” may file under Chapter 12. The provision delineating who may be a debtor under Chapter 9 is no exception. Only municipalities may file under Chapter 9, and only if the State has “specifically authorized” the municipality to do so. §§ 109(c)(1) — (2); see also McConnell & Picker, 60 Chi. L. Rev., at 455-461 (discussing the gatekeeping requirements for Chapter 9).
That Puerto Rico is not a “State” for purposes of the gateway provision, however, says nothing about whether Puerto Rico is a “State” for the other provisions of Chapter 9 involving the States. The States do not “pass through” the gateway provision. Post, at 1953. The gateway provision is instead directed at the debtors themselves — the municipalities, in the case of Chapter 9 bankruptcy. A municipality that cannot secure state authorization to file a Chapter 9 petition is excluded from Chapter 9 entirely. But the same cannot be said about the State in which that municipality is located. " A *1948 State’s only role under the gateway provision is to provide that “authorization]” to file. § 109(c)(2). The pre-emption provision then imposes an additional requirement: The States may not enact their own municipal bankruptcy schemes. A State that chooses not to authorize its municipalities to seek Chapter 9 relief under the gateway provision is no less bound by that pre-emption provision. Here too, Puerto Rico is no less bound by the pre-emption provision even though Congress has removed its authority to provide authorization for its municipalities to file Chapter 9 petitions. Again, if it were Congress’ intent to also exclude Puerto Rico as a “State” for purposes of that pre-emption provision, it would have said so.
Second, both petitioners and the dissent place great weight on the introductory clause of § 903. Post, at 1952, The preemption provision cannot apply to Puerto Rico, so goes the argument, because it is a proviso to § 903’s introductory clause, which they posit is inapplicable to Puerto • Rico. The introductory clause affirms that Chapter 9 “does not limit or impair the power of a State to control” its “munici-palitfies].” § 903. The dissent surmises that this clause “is irrelevant” and “meaningless” in Puerto Rico, Post, at 1952. Because Puerto Rico’s municipalities are ineligible for Chapter 9 relief, Chapter 9 cannot “a£fec[t] Puerto Rico’s control over its municipalities,” according to the dissent. Ibid. In other words, “there is no power” for the introductory clause to “reserve” for Puerto Rico’s use. Ibid. Petitioners likewise contend that “it would be nonsensical for Congress to provide Puer-to Rico with a shield against intrusion by a Chapter that, by definition, can have no effect on Puerto Rico.” Brief for Petitioner Commonwealth of Puerto Rico et al. in No. 15-233, p. 25. So “it follows” that the pre-emption provision, the proviso to that clause, cannot apply either. Ibid.
This reading rests on the faulty assumption that Puerto Rico is, “by definition,” excluded from Chapter 9. Ibid. For all of the reasons already explained, see Part IIB-l, supra, it is not. The amended definition of “State” precludes Puerto Rico from authorizing its municipalities to seek Chapter 9 relief. But Puerto Rico is no less a “State” for purposes of § 903’s introductory clause and its proviso. Both continue to apply in Puerto Rico. They are neither “irrelevant” nor “meaningless.” Post, at 1952. If, for example, Congress created a path for the Puerto Rican municipalities to restructure their debts under Chapter 9, then § 903 would assure Puerto Rico, no less a “State” for purposes of this section, of its continued power to “control, by legislation or otherwise, [its] municipalities] ... in the exercise of the political or governmental powers of such municipalities].”
Third, the • Government Development Bank contends that the Recovery Act does not run afoul of the pre-emption provision because the Recovery Act does not bind nonconsenting “creditors,” as the Bankruptcy Code now defines that term. In 1978, Congress redefined “creditor” to mean an “entity that has a claim against the debtor■____” 92 Stat. 2550, now codified at § 101(10) (emphasis added). A “debtor,” in turn, is a “person or municipality concerning which a case under this title has been commenced.” Id., at 2551, now codified at § 101(13) (emphasis added). In light of these definitions, the Bank contends that the Puerto Rican municipalities are not “debtor[s]” as the Code defines the term because they cannot “commene[e]” an action under Chapter 9 without authorization from Puerto Rico. Brief for Petitioner Acosta-Febo et al. 31-33. And because respondents cannot be “creditors” of a nonexistent “debtor,” the Recovery Act is not a “State law” that *1949 binds “any creditor.” § 903(1). Id., at 31-33.
Tellingly, the dissent does not adopt this reading. The Bank’s interpretation would nullify the pre-emption provision. Applying the Bank’s logic, a municipality that fails to meet any one of the requirements of Chapter 9’s gatekeeping provision is not a “debtor” and would have no “creditors.” So a State could refuse to “specifically authoriz[e]” its municipalities to seek relief under Chapter 9, § 109(c)(2), required to commence a case under that chapter. That State would be free to enact its own municipal bankruptcy scheme because its municipalities would have no “creditors” under federal law. The technical amendments to the definitions of “creditor” and “debtor” are too “subtle a move” to support such a “[fundamental chang[e] in the scope” of Chapter 9’s pre-emption provision. Kellogg Brown & Root Services, Inc. v. United States ex rel. Carter, 575 U.S. -, -, 135 S.Ct. 1970, 1977, 191 L.Ed,2d 899 (2015).
The dissent concludes that “the government and people of Puerto Rico should not have to wait for possible congressional action to avert the consequences” of the Commonwealth’s fiscal crisis. Post, at 1953-1954. But our constitutional structure does not permit this Court to “rewrite the statute that Congress has enacted.” Dodd v. United States, 545 U.S. 353, 359, 125 S.Ct. 2478, 162 L.Ed.2d 343 (2005); see also Electric Storage Battery Co. v. Shimadzu, 307 U.S. 5, 14, 59 S.Ct. 675, 83 L.Ed. 1071 (1939). That statute precludes Puerto Rico from authorizing its municipalities to seek relief under Chapter 9. But it does not remove Puerto Rico from the scope of Chapter 9’s pre-emption provision. Federal law, therefore, pre-empts the Recovery Act. The judgment of the Court of Appeals for the First Circuit is affirmed.

It is so ordered.

Justice ALITO took no part in the consideration or decision of these cases.

 After the parties briefed and argued these cases, Members of Congress introduced a bill in the House of Representatives to establish an oversight board to assist Puerto Rico and its instrumentalities. See H. -5278, 114th Cong., 2d Sess. (2016). The bill does not amend the Federal Bankruptcy Code; it in *1944 stead proposes adding a chapter to Title 48, governing the Territories. Id., § 6.