ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| MABEL DEL CARMEN COLÓN BERRIOS Y OTROS<br><br>Recurrido<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO Y OTROS<br><br>Recurrente | KLCE202301361 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.: PO2022CV03346<br><br>Sobre: IMPERICIA MÉDICA |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Alvarez Esnard y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de marzo de 2024.

Comparece el Estado Libre Asociado de Puerto Rico en representación del Departamento de Corrección y Rehabilitación, (el ELA o el peticionario) y solicita la revocación de la *Orden* emitida el 16 de octubre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI o foro primario), notificada el 20 de octubre de 2023. Mediante la *Orden* recurrida, el foro primario declaró *No Ha Lugar* el *Aviso de Injunction Paralizando la Litigación,* presentado por el ELA al amparo del *Puerto Pico Oversight, Management and Economic Stability Act* (PROMESA), 48 U.S.C. sec. 2101 *et seq.*, en el caso de epígrafe, sobre daños y perjuicios por impericia médica instado en su contra por la señora Mabel del Carmen Colón Berrios y otros (señora Colón Berrios o la parte recurrida).

Por los fundamentos que expondremos a continuación expedimos el auto de *Certiorari* solicitado por el ELA y confirmamos la *Orden* recurrida.

Número Identificador

SEN2023_____

**I.**

Por hechos ocurridos entre el 11 de enero de 2021 al 16 de enero de 2021, la señora Colón Berríos, y la Sra. Alejandra M. Eusebio Vázquez, esta última por sí y en representación de su hija menor de edad, A.E.T.E., presentaron *Demanda* sobre daños y perjuicios por impericia médica el 5 de diciembre de 2022, en contra del Departamento de Corrección y Rehabilitación (DCR) y el ELA. En síntesis, estas alegaron que mientras Eduardo Torres Colón, (señor Torres Colón), hijo de la señora Colón Berríos y padre de la menor, A.E.T.E., se encontraba ingresado en el Centro Correccional Las Cucharas en Ponce, este falleció. Alegan en la *Demanda* que el señor Torres Colón contrajo sepsis y bacteriemia MRSA, tras recibir atención médica negligente, inadecuada e ineficiente que se desvió de los principios que rigen la mejor práctica de la medicina de emergencias, y que constituyeron el nexo causal de demoras en identificar las condiciones reales que tuvo el señor Torres Colón.[1]

En respuesta, el 15 de febrero de 2023, el ELA presentó *Aviso de Injunction Paralizando la Litigación del Presente Caso* al amparo de PROMESA.[2] En esencia, el ELA sostiene que aunque en el párrafo 59 del *Confirmation Order* emitido el 18 de enero de 2022, por la Jueza de Distrito de los Estados Unidos Laura Taylor Swain, el referido *Injunction* fue modificado para permitir la litigación de casos bajo la *Ley de Pleitos contra el Estado*, siempre y cuando el reclamo se encuentre dentro de los límites estatutarios de $75,000.00 o $150,000.00, según aplique, **la reclamación de la parte apelada ante el TPI excede los límites estatutarios allí establecidos.**

El 17 de febrero de 2023, el foro primario ordenó a la parte apelada fijar su posición en torno a la solicitud de paralización del ELA, en cinco (5) días. Tras solicitar prórroga, el 27 de febrero de 2023, el TPI le concedió un término adicional de diez (10) días.

---

[1] *Véase Demanda*, Anejo I del Apéndice de la *Petición de Certiorari.*
[2] *Véase* Anejo V del Apéndice de la *Petición de Certiorari.*

Finalmente, el 16 de octubre de 2023, el foro primario emitió *Orden* notificada el 20 de octubre de 2023, en la que declaró *No Ha Lugar* el *Aviso de Injunction Paralizando la Litigación del Presente Caso* presentado por el ELA y le concedió diez (10) días a dicha parte para presentar su alegación responsiva.[3]

En desacuerdo, el 31 de octubre de 2023, el ELA presentó *Moción de Reconsideración* en la que reitera los argumentos esbozados en la *Aviso de Injunction Paralizando la Litigación*.[4] Mediante *Orden* de 31 de octubre de 2023, notificada el 2 de noviembre de 2023, el TPI declaró *No Ha Lugar* la *Moción de Reconsideración* presentada por el ELA.[5]

Inconforme, el 4 de diciembre de 2023, el ELA presentó el recurso de epígrafe y señala la comisión del siguiente error:

> **ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO ORDENAR LA PARALIZACIÓN DE LOS PROCEDIMIENTOS, AUN CUANDO DICHA DETERMINACIÓN VA EN CONTRA DE LO DISPUESTO EN LA *ORDEN DE CONFIRMACIÓN, EL PLAN DE AJUSTE Y LA ORDEN* EMITIDA POR LA CORTE DE TÍTULO III EL 20 DE OCTUBRE DE 2022, YA QUE ESTA ÚLTIMA MANTUVO EL *INTERDICTO PERMANENTE* EN EL PRESENTE CASO.**

El 13 de diciembre de 2023, emitimos una *Resolución* mediante la cual le concedimos un término de veinte (20) días a la parte recurrida para presentar su alegato. Posteriormente, el 9 de enero de 2024, la parte recurrida presentó una *Moción Sobre Notificación Defectuosa y Solicitud de Prorroga*. Mediante *Resolución* de 16 de enero de 2024, concedimos una prórroga de veinte (20) días a la parte recurrida para presentar su postura en torno a la *Petición de Certiorari* presentada por el ELA. Así las cosas, el 6 de febrero de 2024, la parte recurrida presentó una *Moción Solicitando Prorroga*. Consecuentemente, el 15 de febrero de 2024, emitimos una

---

[3] *Véase* Anejo XV de la Petición de *Certiorari.*
[4] *Véase* Anejo XVI de la Petición de *Certiorari.*
[5] *Véase* Anejo XVII de la Petición de *Certiorari.*

*Resolución* mediante la cual le concedimos a la parte recurrida un término adicional de diez (10) días.

Dicho término venció el 26 de febrero de 2024, sin que la parte recurrida presentara su oposición en torno a los méritos del recurso de epígrafe, por lo que resolvemos sin el beneficio de su comparecencia.

**II.**

A.

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros,* 2023 TSPR 65, 212 DPR ___ (2023). Véase, además, *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023); *800 Ponce de León Corp. v. AIG,* 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009). En particular, es un recurso mediante el cual se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez, supra.* Así pues, la determinación de expedir o denegar un recurso de *certiorari* está enmarcada en la discreción judicial. *800 Ponce de León Corp. v. AIG, supra.* No obstante, la discreción judicial para expedir o no el auto de *certiorari* solicitado no ocurre en un vacío ni en ausencia de unos parámetros. *Torres González v. Zaragoza Meléndez, supra.*

A esos efectos, la Regla 52.1 de Procedimiento Civil (32 LPRA Ap. V) limita la autoridad de este Tribunal de Apelaciones para revisar las órdenes y resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del *certiorari. Véase, Scotiabank of PR v. ZAF Corp.,* 202 DPR 478, 486-487 (2019). En lo pertinente, la precitada disposición reglamentaria, *supra,* dispone que:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones

cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia, al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Si ninguno de esos elementos está presente en la petición ante la consideración del Tribunal, procede abstenerse de expedir el auto, de manera que se continúen los procedimientos del caso, sin mayor dilación, ante el Tribunal de Primera Instancia. *García v. Asociación*, 165 DPR 311, 322 (2005); *Meléndez Vega v. Caribbean Intl. News*, 151 DPR 649, 664 (2000); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. *Torres González v. Zaragoza Meléndez, supra.* En lo pertinente, la precitada disposición reglamentaria dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debemos utilizarlo con cautela y por razones de peso. *Pueblo v. Díaz de León, supra*, pág. 918.

Ahora bien, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *Pueblo v. Rivera Santiago, supra*, pág. 581; *S.L.G. Flores, Jiménez v. Colberg*, 173 DPR 843 (2008).

### B.

Con el fin de lidiar con la situación económica de Puerto Rico, el Congreso de Estados Unidos aprobó el *Oversight, Management, and Economic Stability Act* (PROMESA), 48 USCA sec. 2101 *et seq.* El Título III de PROMESA viabilizó el procedimiento para que el Gobierno de Puerto Rico pudiera invocar protecciones análogas a las disponibles para una parte que insta una petición de quiebra. Por esto, incorporó ciertas disposiciones de la Ley de Quiebras federal. 48 USCA sec. 2161. La legislación federal de quiebras se aprobó con el propósito de ofrecerle al deudor una herramienta que le

brinde solución a sus problemas financieros a largo plazo y le permita comenzar de nuevo, entre otras cosas. *Puerto Rico v. Franklin California Tax-Free Trust,* 136 S. Ct 1938, 1950, 195 L. Ed. 2d 298 (2016); *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 367, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007). Dentro de las cláusulas de la Ley de Quiebras federal que fueron incorporadas en PROMESA, se encuentra la disposición referente a la paralización automática, 11 USCA. sec. 362.

La paralización automática es una de las protecciones básicas que le ofrece el procedimiento de quiebras al deudor. *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503, 106 S. Ct. 755, 88 L. Ed. 2d 859 (1986). Esta paralización tiene como propósito proteger al deudor de las reclamaciones del acreedor y, además, proteger a los acreedores de reclamaciones realizadas por otros acreedores. Alan N. Resnick & Henry H. Sommer, *Collier on Bankruptcy,* sec. 362.03. En otras palabras, busca preservar el caudal del deudor para que se pueda llevar un proceso ordenado de reorganización. *Morales Pérez v. Policía de Puerto Rico*, 200 DPR 1 (2018) (Martínez Torres, voto de conformidad) *citando a Midlantic Nat'l Bank v. New Jersey Dep't of Envtl.* Prot., *supra,* pág. 503. El efecto de la paralización automática es detener los pleitos que involucren reclamaciones monetarias y que se estén llevando contra el deudor al momento de radicar la petición de quiebra o aquellas que hayan podido comenzar antes de la presentación de la petición de quiebra. 11 USCA sec. 362(a). *Morales Pérez v. Policía de Puerto Rico, supra.* De otro modo, las reclamaciones que prosiguieran su curso en los tribunales tendrían una preferencia que la ley no les concede, pues cobrarían antes que los demás deudores y, a diferencia de estos, podrían resarcir su deuda de forma íntegra. Íd. Todo ello, empequeñecería indebidamente el caudal del quebrado, en perjuicio suyo y de los demás acreedores. Íd. Para evitar esto, la

paralización opera de forma automática en los pleitos, no importa la causa de la reclamación monetaria. Por lo tanto, los tribunales estatales quedan privados de jurisdicción automáticamente y no pueden continuar atendiendo los casos en los que exista una reclamación monetaria contra el deudor que presentó la petición de quiebra. *Morales Pérez v. Policía de Puerto Rico*, *supra*, citando a *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 490-491, (2010), *In re Jamo,* 283 F.3d 392, 398 (1er Cir. 2002).

Por su parte, la Sec. 362(b), 11 USCA 362(b), menciona una serie de excepciones a la paralización automática. En esencia, dispone que esta permanecerá hasta que culmine el proceso o hasta que el tribunal federal la levante parcial o totalmente, de acuerdo con el procedimiento establecido en la Sec. 362(d) de la Ley de Quiebras federal, 11 USCA sec. 362(d*).* Véase, *Morales Pérez v. Policía de Puerto Rico, supra,* citando a *In re Jamo, supra*, pág. 398.

El texto del Título III de PROMESA, 48 USCA sec. 2164, indica que "[e]l inicio de un caso bajo este título constituye una orden de suspensión" (traducción oficial). De lo contrario, el caudal del deudor disminuiría antes de que el tribunal de quiebras evalúe la condición económica del deudor y su plan de pago. Todo esto derrotaría el propósito de proveer un proceso ordenado y uniforme de reorganización de las finanzas del deudor. Véase, *Morales Pérez v. Policía de Puerto Rico, supra* (Martínez Torres, voto de conformidad).

En lo pertinente, el 18 de enero de 2022, el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico emitió ***Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority*** ("*Confirmation*

*Order"*).[6]   Mediante dicha orden, se confirmó el *Modified Eighth Amended Title III Joint Plan Of Adjustment Of The Commonwealth Of Puerto Rico* (Plan de Ajuste de la Deuda) y se fijó como fecha de efectividad ("*effective date*") el 15 de marzo de 2022. Esta *Confirmation Order,* en el párrafo 59 trajo consigo cambios en el proceso de quiebras del Gobierno de Puerto Rico toda vez que sustituyó el efecto de la paralización automática que proveen las secciones 362 y 922 del Código de Quiebras federal, establecidas en la Sección 301 de PROMESA.

En lo concerniente al caso de epígrafe, sobre el referido inciso 59 del *Confirmation Order,* el 20 de octubre de 2022, el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico emitió *Order Extending Administrative Claim Bar Date For Certain Parties and Modifying Discharge Injunction* en la que la Jueza Laura Taylor Swain hizo constar lo siguiente:

[...]

.....

6. ***The injunctions contained in section 92.3 of the Plan and decretal <u>paragraph 59 of the Confirmation Order are modified solely to the limited extent of allowing litigation with respect to claims authorized to be asserted pursuant to 32 LPRA sec.3077(a), to the extent the amount of such claim asserted is with such statutory limitation of $75,000 or $150,000, as applicable,</u> to proceed to final judgment and execution, including any appeals*.* .[7]

## C.

La *Ley de Reclamaciones y Demandas contra el Estado,* Ley Núm. 104 de 29 de junio de 1955, según enmendada (32 LPRA sec. 3077 *et seq.*), autoriza las acciones por daños y perjuicios a la persona o a la propiedad hasta la suma de setenta y cinco mil dólares ($75,000.00) causados por acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona actuando en capacidad oficial y dentro del marco de su función,

---

[6] *Véase, In re*: *Commonwealth of Puerto Rico,* Case No. 17BK3283-LTS, ECF No. 19813.
[7] *Véase,* Case No.17-03283, ECF NO.22650, Párrafo 6, (Documento Núm. 22650,)

cargo o empleo interviniendo culpa o negligencia. Cuando por tal acción u omisión se causarán daños y perjuicios a más de una persona, o cuando sean varias las causas de acción a que tenga derecho un solo perjudicado, la indemnización por todos los daños y perjuicios que causare dicha acción u omisión no podrá exceder de la suma de ciento cincuenta mil dólares ($150,000.00). (32 LPRA sec. 3077(a)).

**III.**

En esencia, el ELA alega que el TPI erró al no ordenar la paralización de los procedimientos y argumenta que la reclamación de la parte recurrida excede el límite estatutario aplicable, por lo que la modificación al interdicto permanente no alteró su aplicación al caso de referencia. Asimismo, el ELA arguye que la reclamación de la parte recurrida debe ser atendida en el foro federal a través de una reclamación de gastos administrativos.

Esboza el ELA que el foro primario interpretó erróneamente la Modificación Parcial emitida el 20 de octubre de 2022, por el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico. Razona que el TPI está impedido de adjudicar la reclamación monetaria de la parte recurrida, pues la modificación al interdicto permanente no aplica al caso de autos, toda vez que la cuantía de la reclamación en daños presentada por la parte recurrida excede y está sujeta a los límites estatutarios establecidos en la Ley de Pleitos contra el Estado.

La orden que modificó el *injunction* permanente para autorizar la litigación de casos de daños instados al palio de la Ley de Pleitos contra el Estado divulgó la salvedad de que, para que se reactivara este tipo de casos, la cuantía de la compensación reclamada no podía exceder los límites estatutarios aplicables. Es decir, de $75,000.00 por reclamante con una sola causa de acción o $150,000.00 en los casos en que de los mismos hechos surjan

múltiples causas de acción para uno o más reclamantes o, cuando existan múltiples reclamantes de daños por los mismos hechos.

En el caso que nos ocupa, el 5 de diciembre de 2022, la parte recurrida instó *Demanda* en daños y perjuicios por impericia médica, en contra del ELA, por hechos ocurridos entre el 11 de enero de 2021 al 16 de enero de 2021, y solicitó una compensación ascendente a $250,000.00 por sufrimientos físicos y angustias mentales causados al señor Torres Colón; $100,000.00 por los sufrimientos y angustias mentales causados a su madre, la señora Colón Berrios; $200,000.00 por el menoscabo del apoyo económico y angustias mentales que sufrió la compañera del señor Torres Colón, Alejandra Eusebio Vázquez y $400,000.00 por los daños sufridos por la menor A.E.T.E., por la pérdida de la compañía de su padre y por el menoscabo económico sufrido por esta.

Aunque en el caso de epígrafe, la cuantía de la reclamación en daños presentada por la parte recurrida ante el TPI excede los límites estatutarios establecidos en la *Ley de Pleitos contra el Estado*, **el foro primario, en el ejercicio de su discreción evaluará si procede la concesión de los daños reclamados. De prevalecer la parte recurrida en el pleito, la cuantía concedida no podrá exceder la establecida por la Ley de Pleitos contra el Estado.**

Establecido lo anterior, concluimos que el foro primario no está impedido de adjudicar la reclamación en daños contra el ELA de la parte recurrida. La modificación al interdicto permanente que permite la adjudicación de reclamaciones en daños en contra del ELA aplica al caso de autos dentro de los límites estatutarios establecidos en la *Ley de Pleitos contra el Estado*. Reiteramos que en la eventualidad de que recaiga una sentencia en contra del ELA, la cantidad máxima con la que se podría compensar a las recurridas por su reclamación jamás podría exceder los límites que establece la *Ley de Reclamaciones y Demandas contra el Estado*. En ese

contexto, concluimos que no incidió el foro primario al denegar la solicitud de paralización presentada por el ELA.

**IV.**

Por los fundamentos antes expuestos, expedimos el auto de *Certiorari* y confirmamos el dictamen recurrido.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones