[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11911
_____

D.C. Docket Nos. 3:15-cv-00031-CAR; 3:13-bkc-03042-JPS


In re: R. SCOTT APPLING,

Debtor.

_____


R. SCOTT APPLING,

Plaintiff - Appellant,

versus

LAMAR, ARCHER & COFRIN, LLP,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(February 15, 2017)

Before WILLIAM PRYOR and ROSENBAUM, Circuit Judges, and MARTINEZ,[*] District Judge.

WILLIAM PRYOR, Circuit Judge:

This appeal presents a question that has divided the federal courts: Can a statement about a single asset be a "statement respecting the debtor's . . . financial condition"? 11 U.S.C. § 523(a)(2). Ordinarily, a debtor cannot discharge any debt incurred by fraud, *id.* § 523(a)(2)(A), but a debtor can discharge a debt incurred by a false statement respecting his financial condition unless that statement is in writing, *id.* § 523(a)(2)(B). R. Scott Appling made false oral statements to his lawyers, Lamar, Archer & Cofrin, LLP, that he expected a large tax refund that he would use to pay his debt to the firm. After Lamar obtained a judgment against Appling for the debt, Appling filed for bankruptcy and Lamar initiated an adversary proceeding to have the debt ruled nondischargeable. The bankruptcy court and the district court ruled that Appling's debt could not be discharged under section 523(a)(2)(A) because it was incurred by fraud. But we disagree. Because Appling's statements about his tax refund "respect[] [his] . . . financial condition," *id.* § 523(a)(2)(B)(ii), and were not in writing, *id.* § 523(a)(2)(B), his debt to Lamar can be discharged in bankruptcy. We reverse and remand.

---

[*] Honorable Jose E. Martinez, United States District Judge for the Southern District of Florida, sitting by designation.

## I. BACKGROUND

R. Scott Appling hired the law firm Lamar, Archer & Cofrin, LLP, to represent him in litigation against the former owners of his new business. Appling agreed to pay Lamar on an hourly basis with invoices for fees and costs due monthly. Appling became unable to keep current on the mounting legal bill and as of March 2005, owed Lamar $60,819.97. Lamar threatened to terminate the firm's representation and place an attorney's lien on all work product unless Appling paid the outstanding fees.

Appling and his attorneys held a meeting in March 2005. The bankruptcy court found that during this meeting Appling stated he was expecting a tax refund of "approximately $100,000," which would be enough to pay current and future fees. Lamar contends that in reliance on this statement, it continued its representation and did not begin collection of its overdue fees.

When Appling and his wife submitted their tax return, they requested a refund of only $60,718 and received a refund of $59,851 in October. The Applings spent this money on their business. They did not pay Lamar.

Appling and his attorneys met again in November 2005. The bankruptcy court found that Appling stated he had not yet received the refund. Lamar contends that in reliance on this statement, it agreed to complete the pending litigation and forego immediate collection of its fees but refused to undertake any additional

3

representation. In March 2006, Lamar sent Appling his final invoice for a principal amount due of $55,303.66 and $6,185.32 in interest.

Five years later, Lamar filed suit against Appling in a superior court in Georgia. In October 2012, Lamar obtained a judgment for $104,179.60. Three months later, the Applings filed for bankruptcy.

Lamar initiated an adversary proceeding against Appling in bankruptcy court. The bankruptcy court ruled that because Appling made fraudulent statements on which Lamar justifiably relied, Appling's debt to Lamar was nondischargeable, 11 U.S.C. § 523(a)(2)(A). The district court affirmed. The district court rejected Appling's argument that his oral statements "respect[ed] . . . [his] financial condition," 11 U.S.C. § 523(a)(2)(B), and should have been dischargeable. The district court ruled that "statements respecting the debtor's financial condition involve the debtor's net worth, overall financial health, or equation of assets and liabilities. A statement pertaining to a single asset is not a statement of financial condition." The district court agreed with the bankruptcy court that Appling made material false statements with the intent to deceive on which Lamar justifiably relied.

## II. STANDARD OF REVIEW

When we sit as the second appellate court to review a bankruptcy case, *In re Glados, Inc.*, 83 F.3d 1360, 1362 (11th Cir. 1996), we "assess the bankruptcy

4

court's judgment anew, employing the same standard of review the district court itself used," *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009). "Thus, we review the bankruptcy court's factual findings for clear error, and its legal conclusions *de novo*." *Id.*

### III. DISCUSSION

The Bankruptcy Code gives a debtor a fresh start by permitting him to discharge his pre-existing debts. But there are many exceptions to discharge. And some of those exceptions protect victims of fraud.

Section 523(a)(2) creates two mutually exclusive exceptions to discharge:

> **(a)** A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
> . . .
>
> > **(2)** for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> >
> > > **(A)** false pretenses, a false representation, or actual fraud, *other than a statement respecting the debtor's or an insider's financial condition*;
> > >
> > > **(B)** use of a *statement in writing*—
> > >
> > > > (i)  that is materially false;
> > > > (ii)  *respecting the debtor's or an insider's financial condition*;
> > > > (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> > > > (iv) that the debtor caused to be made or published with intent to deceive; . . .

11 U.S.C. § 523(a)(2) (emphasis added).

5

The Code treats debts incurred by a statement "respecting the debtor's . . . financial condition" differently from other debts. *Id.* All fraud "other than a statement respecting the debtor's . . . financial condition" is covered by subsection (A). *Id.* § 523(a)(2)(A). Under subsection (A), a debtor cannot discharge a debt obtained by any type of fraudulent statement, oral or written. *Id.* A creditor also need prove only justifiable reliance. *Field v. Mans*, 516 U.S. 59, 61 (1995). But if a statement is made "respecting the debtor's . . . financial condition," then subsection (B) governs. 11 U.S.C. § 523(a)(2)(B)(ii). To avoid discharge of a debt induced by a statement respecting the debtor's financial condition, a creditor must show reasonable reliance and that the statement was intentional, materially false, and in writing. *Id.* § 523(a)(2)(B). Thus, a debt incurred by an oral, fraudulent statement respecting the debtor's financial condition can be discharged in bankruptcy.

We must determine whether Appling's statements about a single asset are "statement[s] respecting [his] . . . financial condition." *Id.* § 523(a)(2). The bankruptcy court found that Appling made false oral statements about his anticipated tax refund to receive an extension of credit from Lamar. If these statements *do not* respect his financial condition, Appling can discharge his debt to Lamar in bankruptcy only if he disproves an element of fraud. *Id.* § 523(a)(2)(A). But if the statements *do* respect his financial condition, Appling can discharge his debt to Lamar because the statements were not in writing. *Id.* § 523(a)(2)(B).

6

The circuits and other federal courts are split on this question. The Fourth Circuit has held that a "debtor's assertion that he owns certain property free and clear of other liens is a statement respecting his financial condition." *Engler v. Van Steinburg*, 744 F.2d 1060, 1061 (4th Cir. 1984). Several bankruptcy courts—including one in this Circuit, *In re Aman*, 492 B.R. 550, 565 & n.47 (Bankr. M.D. Fla. 2010)—have agreed. *See, e.g., In re Carless*, No. 10-42988, slip op. at *3–4 (Bankr. D.N.J. Jan. 6, 2012); *In re Nicolai*, No. 05-29876, slip op. at *1 (Bankr. D.N.J. Jan. 31, 2007); *In re Hambley*, 329 B.R. 382, 399 (Bankr. E.D.N.Y. 2005); *In re Priestley*, 201 B.R. 875, 882 (Bankr. D. Del. 1996); *In re Kolbfleisch*, 97 B.R. 351, 353 (Bankr. N.D. Ohio 1989); *Matter of Richey*, 103 B.R. 25, 29 (Bankr. D. Conn. 1989); *In re Rhodes*, 93 B.R. 622, 624 (Bankr. S.D. Ill. 1988); *In re Howard*, 73 B.R. 694, 702 (Bankr. N.D. Ind. 1987); *In re Panaia*, 61 B.R. 959, 960–61 (Bankr. D. Mass. 1986); *In re Roeder*, 61 B.R. 179, 181 n.1 (Bankr. W.D. Ky. 1986); *In re Prestridge*, 45 B.R. 681, 683 (Bankr. W.D. Tenn. 1985). But the Fifth, Eighth, and Tenth Circuits have held that a statement about a single asset does not respect a debtor's financial condition because it "says nothing about the overall financial condition of the person making the representation or the ability to repay debt." *In re Bandi*, 683 F.3d 671, 676 (5th Cir. 2012); *see also In re Lauer*, 371 F.3d 406, 413–14 (8th Cir. 2004); *In re Joelson*, 427 F.3d 700, 706 (10th Cir. 2005). And some bankruptcy courts in other circuits have agreed. *See, e.g., In re*

7

*Feldman*, 500 B.R. 431, 437 (Bankr. E.D. Penn. 2013); *In re Banayan*, 468 B.R. 542, 575–76 (Bankr. N.D.N.Y. 2012); *In re Campbell*, 448 B.R. 876, 886 (Bankr. W.D. Penn. 2011).

"[I]nterpretation of the Bankruptcy Code starts 'where all such inquiries must begin: with the language of the statute itself.'" *Ransom v. FIA Card Servs. N.A.*, 562 U.S. 61, 69 (2011) (quoting *United States v. Ron Pair Enters, Inc.*, 489 U.S. 235, 241 (1989)). Because the Code does not define the relevant terms, we look to "their ordinary, everyday meanings—unless the context indicates that they bear a technical sense." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 (2012); *see also In re Piazza*, 719 F.3d 1253, 1261 (11th Cir. 2013) (applying this canon to the Bankruptcy Code). The text and context establish that a statement about a single asset can be a "statement respecting the debtor's . . . financial condition." 11 U.S.C. § 523(a)(2).

"Financial condition" likely means one's overall financial status. Elsewhere in the statute, the Bankruptcy Code defines "insolvent" as the "financial condition such that the sum of such entity's debts is greater than all of such entity's property." *Id.* § 101(32)(A). In this context, the statute uses "financial condition" to describe the overall state of being insolvent, not any particular asset on its own. Because "[a] word or phrase is presumed to bear the same meaning throughout a text," Scalia & Garner, *supra*, at 170, we should interpret "financial condition" in

8

section 523(a)(2) in the same way. Whether by its ordinary meaning or as a term of art, "financial condition" likely refers to the sum of all assets and liabilities.

But even if "financial condition" means the sum of all assets and liabilities, it does not follow that the phrase "statement *respecting* the debtor's . . . financial condition," *Id.* § 523(a)(2) (emphasis added), covers only statements that encompass the entirety of a debtor's financial condition at once. Read in context, the phrase "statement *respecting* the debtor's . . . financial condition," *id.*, includes a statement about a single asset. We must not read the word "respecting" out of the statute. *See* Scalia & Garner, *supra*, at 174 ("If possible, every word . . . is to be given effect.").

"Respecting" is defined broadly as "[w]ith regard or relation to; regarding; concerning." *Respecting*, *Webster's New International Dictionary* 2123 (2d ed. 1961); *see also Respecting*, *Oxford English Dictionary* (online ed.) ("With respect to; with reference to; as regards."). For example, documents can "relate to" or "concern" someone's health without describing their entire medical history. Articles can "reference" the Constitution without quoting its entire text. Likewise, a statement can "respect" a debtor's "financial condition" without describing the overall financial situation of the debtor. The Supreme Court has interpreted "with respect to" in a statute to mean "direct relation to, or impact on." *Presley v. Etowah Cty. Comm'n*, 502 U.S. 491, 506 (1992). And the Court has interpreted

9

"respecting" in the First Amendment to include any partial step toward the establishment of religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971). A statement about a single asset "relates to" or "impacts" a debtor's overall financial condition. And knowledge of one asset or liability is a partial step toward knowing whether the debtor is solvent or insolvent.

If the statute applied only to statements that expressed a debtor's overall financial condition, Congress could have said so. Lamar argues that "the preposition 'respecting' has no magic, expansive effect in the statute, it is simply a required grammatical device necessary to connect two related terms." Perhaps this argument would have more sway if the statute said "statement *of* the debtor's financial condition." But Congress did not use this language. Congress also did not say "statement indicating" or "revealing" or "disclosing" or "encompassing" the debtor's financial condition, phrases that would connote a full or complete expression of financial condition.

Lamar dismisses the focus on the word "respecting" as "nothing more than a game of semantics," but judges have a responsibility to interpret the whole text. And "[s]ometimes the canon [of ordinary meaning] governs the interpretation of so simple a word as a preposition." Scalia & Garner, *supra*, at 71. A statement about a single asset is still a statement *respecting* a debtor's financial condition.

10

Lamar argues that because the legislative history often used "financial statement" in place of "statement respecting the debtor's . . . financial condition," 11 U.S.C. § 523(a)(2), we should read the statute to apply only to financial statements, but the word "statement" should also be given its ordinary meaning. Mere proximity of "statement" to "financial condition" is not enough to limit the meaning of the text. "Statement" is defined as "[t]hat which is stated; an embodiment in words of facts or opinions; a narrative; recital; report; account." *Statement*, *Webster's New International Dictionary* 2461 (2d ed. 1961). The definition of financial statement is technical and would exclude a statement about a single asset: "A balance sheet, income statement, or annual report that summarizes an individual's or organization's financial condition on a specified date or for a specified period by reporting assets and liabilities." *Financial Statement*, *Black's Law Dictionary* (10th ed. 2014). Setting aside the problems with legislative history, Lamar's argument works against it. Precisely because "[t]he term 'financial statement' has a strict, established meaning," *Joelson*, 427 F.3d at 709, we should expect the statute to say "financial statement" if it conveys that meaning. But the statute instead says "statement." To limit the definition to only "financial statements," Congress need only say so. *Cf.* 11 U.S.C. § 1125 (using the term "disclosure statement"); *Id.* § 101(49)(A)(xii) ("registration statement").

11

The surplusage cannon supports our determination that "statement" should be given its ordinary meaning. "If possible, every word and every provision is to be given effect. . . . None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." Scalia & Garner, *supra*, at 174; *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). In subsection (B), the statute says "use of a statement in writing." 11 U.S.C. § 523(a)(2)(B). Because a formal financial statement is almost always a written document (it is hard to imagine an oral recitation of all assets and liabilities), reading the statute to cover only financial statements would render the writing requirement surplusage.

And in the context of a statute about fraud, the ordinary meaning of the word "statement" makes sense. Section 523(a)(2) creates two similar exceptions to discharge for debts incurred by fraud. Subsection (A) references specific common-law torts. *See Field*, 516 U.S. at 69 ("'[F]alse pretenses, a false representation, or actual fraud,' carry the acquired meaning of terms of art. . . . [T]hey imply elements that the common law has defined them to include." (quoting 11 U.S.C. § 523(a)(2)(A))). Subsection (B) enumerates its own elements which are analogous, but not identical to the common law elements. For example, where the common law requires justifiable reliance, section 523(a)(2)(B)(iii) requires reasonable reliance. *Field*, 516 U.S. at 72–75. Similarly, where the common law requires either an affirmative representation or an intentional omission, section

12

523(a)(2)(B) requires a "statement," as opposed to an omission. True, if Congress wanted to exclude omissions from subsection (B), it could have used the term "representation" and avoided the confusion with the term "financial statement." But Congress would not have said "false representation" without implying the common law term of art. *See Field*, 516 U.S. at 69. Accordingly, "statement" means an expression or embodiment in words, as opposed to a nonactionable omission.

Lamar also argues that the "only way to give Section 523(a)(2)(A) meaning is to interpret it to provide a distinction between oral and written representations," but this argument reveals a fundamental misunderstanding of the statute. Section 523(a)(2)(A) covers most fraud. But section 523(a)(2)(B) covers statements respecting financial conditions. Lamar states that "certain oral misrepresentations must be non-dischargeable." They are. Any debt incurred by an oral misrepresentation that is not "respecting the debtor's financial condition" is nondischargeable under subsection (A). Appling provides a list of examples, including false representations about job qualifications and lies about the purpose and recipient of a payment. The question is how broadly to define the phrase "statement respecting the debtor's . . . financial condition," not whether allowing discharge of debts incurred by oral misrepresentations about finances is a good idea. The statute allows the discharge of debts incurred by oral statements so long

13

as they "respect" the debtor's "financial condition." Lamar's argument is based on policy, not statutory structure.

When the language of the statute is clear, we need not look any further. *See Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016) (When "the statute's language is plain," "that is also where the inquiry should end." (internal quotations omitted)); *United States v. Great Northern Ry. Co.*, 287 U.S. 144, 154 (1932) ("[W]e have not traveled, in our search for the meaning of the lawmakers, beyond the borders of the statute."). A distaste for dishonest debtors does not empower judges to disregard the text of the statute. Because the text is not ambiguous, we hold that "statement[s] respecting the debtor's . . . financial condition" may include a statement about a single asset.

This result is also perfectly sensible. The requirement that some statements be made in writing promotes accuracy and predictability in bankruptcy disputes that often take place years after the facts arose. Lamar refers to our interpretation as a "giant fraud loophole." But the requirement of a writing is not at all unusual in the history of the law. From the Statute of Frauds to the Uniform Commercial Code, law sometimes requires that proof be in writing as a prerequisite to a claim for relief. This requirement may seem harsh after the fact, especially in the case of fraud, but it gives creditors an incentive to create writings before the fact, which provide the court with reliable evidence upon which to make a decision. In the

14

context of a debt incurred by fraud, a lender concerned about protecting its rights in bankruptcy can easily require a written statement from the debtor before extending credit. Lamar, a law firm, could have required Appling to put his promise to spend his tax return on their legal fees in writing before continuing to represent him.

This rule strikes a reasonable balance between the "'conflicting interests' of discouraging fraud and of providing the honest but unfortunate debtor a fresh start." *In re Vann*, 67 F.3d 277, 284 (11th Cir. 1995) (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). The code does not unfairly reward dishonest debtors, but instead imposes different requirements of proof for different kinds of statements. A statement respecting a debtor's financial condition must be in writing, which helps both the honest debtor prove his honesty and the innocent creditor prove a debtor's dishonesty. And providing an incentive for creditors to receive statements in writing may reduce the incidence of fraud. Because a statement about a single asset can be a "statement respecting the debtor's . . . financial condition," and because Appling's statements were not in writing, his debt can be discharged under section 523(a)(2)(B).

15

## IV. CONCLUSION

We **REVERSE** the order ruling that Appling's debt to Lamar is nondischargeable and **REMAND** for further proceedings consistent with this opinion.

ROSENBAUM, Circuit Judge, concurring:

Sometimes things are not as they seem. Today we conclude that the phrase "statement respecting . . . the debtor's financial condition" in 11 U.S.C. § 523(a)(2) warrants a broad reading. As a result, Appling, the debtor in this case, will receive a discharge of the debt he incurred by lying about how he would pay for the legal services he dishonestly obtained. That certainly seems to frustrate a "primary purpose" of the Bankruptcy Act to provide relief to only the "honest debtor." *See Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934) (citation and internal quotation marks omitted).

But in actuality, the broad reading we give to the phrase "statement respecting . . . the debtor's financial condition" better promotes congressional intent to give a fresh start to only the "honest debtor" than does a narrow construction of the same phrase. This is so because the very same phrase appears in both §§ 523(a)(2)(A) and (B), and it must have the same meaning in both subsections. Though a narrow construction of the phrase in subsection (A) seems to further congressional intent to protect only the "honest debtor," a broad interpretation of the phrase in subsection (B) better comports with congressional intent. And the reality is that a broad construction of the phrase "statement respecting . . . the debtor's financial condition" in subsection (B) advances

17

congressional intent to provide relief for only the "honest debtor" more than a narrow interpretation of the same phrase in subsection (A).

Because the words of the phrase alone are ambiguous, we must construe the phrase with an eye towards congressional intent in enacting the Bankruptcy Act. When we do that, it is clear that "statement respecting . . . the debtor's financial condition" must have the broad meaning that the panel attributes to it.

## I.

There's no getting around it.  Standing alone, the words of the phrase "statement respecting . . . the debtor's financial condition" are not unambiguous. True, the panel seems to think they are and argues that the words clearly mean any statement about any finance, asset, or liability that the debtor may have.  But other courts have concluded that the language "statement respecting . . . the debtor's financial condition" refers to only statements about a debtor's overall financial circumstances—which do not include statements about only a single asset or liability.

Among the courts that appear to have understood the phrase to mean the opposite of what we conclude today is the Supreme Court, though the Supreme Court has not expressly addressed the meaning of the language.  In *Field v. Mans*, 516 U.S. 59 (1995), the Court held that a creditor need show only justifiable reliance on a fraudulent misrepresentation in order to except the debt incurred as a

18

result of that reliance, from discharge under § 523(a)(2)(A). In reaching this conclusion, the Supreme Court discussed § 523(a)(2)(A) and (B)'s references to "a statement respecting the debtor's . . . financial condition" and conveyed its understanding that the words "financial condition" in § 523(a)(2) are a prohibition on excepting from discharge under both subsections (A) and (B) "debts traceable to . . . a materially false *financial statement*," *id.* at 64 (emphasis added), apparently meaning "financial statement" as a term of art referring to a statement of net worth, not a statement about a single asset or liability. So at least at the time it decided *Field*, the Supreme Court appeared to have a different understanding of the phrase "a statement respecting the debtor's . . . financial condition" than we embrace today.

To be sure, I do not suggest that *Field*'s discussion of the meaning of "a statement respecting the debtor's . . . financial condition" purports to instruct courts on the proper meaning of § 523(a)(2)(A). But the Supreme Court's understanding as conveyed in *Field* demonstrates that the language of the phrase is fairly susceptible of more than one meaning.

Three other circuits have likewise concluded that the phrase "a statement respecting the debtor's . . . financial condition" must be construed narrowly, to refer to only those statements about a debtor's overall net worth—though they do not appear to have determined the language of the phrase to have an unambiguous

19

meaning.  *See*, *e.g.*, *In re Bandi*, 683 F.3d 671 (5th Cir. 2012); *In re Lauer*, 371 F.3d 406 (8th Cir. 2004); *In re Joelson*, 427 F.3d 700 (10th Cir. 2005).

But while the language itself of the phrase in question may not be unambiguous, that doesn't mean that § 523(a)(2) is ambiguous in the overall statutory scheme.  When we construe a statute, we must do so not only by looking to the language itself, but also by reference to "the specific context in which that language is used, and the broader context of the statute as a whole."  *Yates v. United States*, 125 S. Ct. 1074, 1081-82 (2015) (citation and quotation marks omitted).  And when we do that, it is clear that we must give the phrase "a statement respecting the debtor's . . . financial condition" a broad construction.

The Supreme Court has repeatedly emphasized that the Bankruptcy Code "limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.'"  *Grogan v. Garner*, 498 U.S. 279, 287 (1991) (quoting *Hunt*, 292 U.S. at 244).  For this reason, only honest debtors receive the benefit of the general policy that exceptions to discharge are to be construed strictly against the creditor and liberally in favor of the debtor.  *In re St. Laurent*, 991 F.2d 672, 680 (11th Cir. 1991).  Indeed, we have said that "the malefic debtor may not hoist the Bankruptcy Code as protection from the full consequences of fraudulent conduct."  *Id.* at 680-81.

20

So to the extent that the language "statement respecting . . . the debtor's financial condition" is fairly and reasonably susceptible of a construction that better furthers congressional intent to protect only the honest debtor, we are obliged to apply that interpretation.   When it comes to § 523(a)(2), a broad construction is reasonable and better accomplishes this purpose than a narrow one.

As the panel notes, the phrase "statement respecting . . . the debtor's financial condition" appears in both subsections (A) and (B).   We therefore presume it to have the same meaning in both subsections.  *See Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980) ("[W]e cannot accept respondent's position without unreasonably giving the word 'filed' two different meanings in the same section of the statute.").

But though the words have the same meaning in both subsections (A) and (B), they have opposite effects on whether a debtor may discharge a debt for something obtained through the use of a "statement respecting . . . the debtor's financial condition."   Under subsection (A), which refers to oral statements, if a statement falls within the meaning of "statement respecting . . . the debtor's financial condition," the debt incurred as a result of that statement is dischargeable. Meanwhile, under subsection (B), which refers to written statements, if a statement comes within the meaning of "statement respecting . . . the debtor's financial

21

condition," the debt incurred as a result of that statement is not dischargeable, provided that the other conditions in subsection (B) are satisfied.

So if the phrase has a broad meaning, more false oral statements will have the effect of exempting a debt incurred as the result of a misrepresentation, from the exception to discharge (meaning that such debts will be discharged), than if we construe the phrase narrowly.  But fewer false written statements will result in excusing a debt for a fraudulently obtained asset, service, or loan.  And since it seems likely that, at least in arm's length transactions, most significant debts are obtained as the result of written representations about finances, as opposed to oral ones, a broader interpretation of the phrase is less likely to benefit dishonest debtors than a narrow construction of it.

## II.

For these reasons, I agree with the panel that we must construe the phrase "statement respecting . . . the debtor's financial condition" broadly.  To be sure, doing so has the effect of allowing Appling's debt for legal services, which the bankruptcy court concluded he obtained by lying to Lamar about the tax refund, to be discharged.  But in the overall statutory scheme, the broad interpretation better promotes Congress's concern to provide relief to "honest debtors" only.

22