# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-40229

United States Court of Appeals
Fifth Circuit

**FILED**

December 29, 2017

Lyle W. Cayce
Clerk

In the Matter of: RANDALL LEE HALER

Debtor

RANDALL HALER,

Appellant

v.

BOYINGTON CAPITAL GROUP, L.L.C.,

Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:16-CV-185

Before KING, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:*

Randall Lee Haler filed for Chapter 7 bankruptcy. Boyington Capital Group, L.L.C., then filed a complaint, requesting that a state court judgment debt be declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(2), (4), and (6). Boyington then filed a motion for partial summary judgment. The bankruptcy court granted summary judgment in favor of Boyington. It found

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-40229

that the debt, which was obtained by Haler's false representations, was non-dischargeable under § 523(a)(2)(A). The district court affirmed the grant of summary judgment. Haler now appeals. Because Haler's representations were statements respecting financial condition, his debt is outside the scope of the § 523(a)(2)(A) exception. We REVERSE.

## I.

Randall Lee Haler was the Executive Vice President and a limited partner of McKinney Aerospace, L.P. ("McKinney"), a company that repaired and refurbished business jets. In March 2006, McKinney entered into four contracts with Boyington Capital Group, L.L.C. ("Boyington"), to repair and restore a Boyington jet. In April 2006, Boyington tendered a payment of $337,275 to McKinney. Subsequently, the parties agreed on a change order. On June 6, 2006, Boyington tendered an additional $60,000 for that change order. However, later on the same day, Boyington sent a letter to McKinney, asking McKinney to stop work on the jet and to refund any money paid but not yet spent. While McKinney acknowledged that it needed to return money to Boyington, it did not issue any refunds.

A month later in July 2006, Boyington sued Haler and other parties in Texas state court for, inter alia, fraud under state law theories of recovery. At the trial, Greg Morse of Boyington stated that Haler had expressed to Boyington that McKinney was in "very fine legally [sic] financial shape" and had "plenty of cash to operate [the] business during the term that [it was] working on" the jet. The jury found, inter alia, that Haler's representations were false and that Haler was therefore liable for fraud. The jury returned a verdict in favor of Boyington and awarded $258,021.73 in damages. The state district court issued a final judgment on December 6, 2011. Haler appealed, but the Texas appeals court affirmed the final judgment with respect to all

2

No. 17-40229

issues except for attorneys' fees. In June 2015, the state district court issued an amended judgment, which became final and non-appealable.

After the entry of the jury verdict but before the December 2011 final judgment, Haler filed a voluntary Chapter 7 bankruptcy petition in June 2010. Boyington then initiated this adversary proceeding in September 2010, seeking a declaration that the state court judgment debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2), (4), and (6). After the state court issued the amended judgment in June 2015, Boyington filed a motion for partial summary judgment. It argued that the debt is non-dischargeable pursuant to § 523(a)(2)(A) and (a)(4) as a matter of law because Haler is collaterally estopped from relitigating the determinations rendered in state court concerning his fraud. The bankruptcy court granted Boyington's motion. It decided that collateral estoppel applied and then declared the debt non-dischargeable under § 523(a)(2)(A). In doing so, it rejected Haler's argument that his oral statements were outside the scope of § 523(a)(2)(A) because they pertained to McKinney's financial condition. Haler appealed, but the district court affirmed the bankruptcy court's decision. Haler then timely appealed to this court. He now contends that his representations that (1) McKinney was in "very fine legally [sic] financial shape" and (2) it had "plenty of cash to operate [the] business" were "statement[s] respecting . . . financial condition" under § 523(a)(2)(A) and thus dischargeable under this subsection.

## II.

We review a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *See Judgment Factors, L.L.C. v. Packer (In re Packer)*, 816 F.3d 87, 91 (5th Cir. 2016). The meaning of "statement respecting . . . financial condition" in 11 U.S.C. § 523(a)(2) is a question of law, which we consider de novo. *See Bandi v. Becnel (In re Bandi)*, 683 F.3d 671, 674 (5th Cir. 2012). The bankruptcy court granted summary judgment in favor of Boyington,

No. 17-40229

which is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *In re Packer*, 816 F.3d at 91 (quoting Fed. R. Civ. P. 56(a)).

In a Chapter 7 bankruptcy proceeding, a court discharges many of the debtor's preexisting obligations. *See* 11 U.S.C. § 727. While the general purpose of the Bankruptcy Code is to provide debtors with a "fresh start," there are several statutory exceptions to discharge. *In re Bandi*, 683 F.3d at 674. Some debts incurred as a result of the debtor's fraud or other misconduct cannot be discharged. *See* 11 U.S.C. § 523. At issue here is whether the exception to discharge set forth in 11 U.S.C. § 523(a)(2)(A) applies to Haler's oral statements, thus rendering the state court judgment debt non-dischargeable. This issue turns on whether his oral statements qualify as "statement[s] respecting . . . financial condition." *Id.* § 523(a)(2)(A). If his statements indeed qualify, then they are outside the scope of § 523(a)(2)(A) and therefore subject to discharge. *See In re Bandi*, 683 F.3d at 674.

The phrase "statement respecting . . . financial condition" appears in subsections (A) and (B) of 11 U.S.C. § 523(a)(2):

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> > (A) false pretenses, a false representation, or actual fraud, other than a *statement respecting* the debtor's or an insider's[1] *financial condition*;
> > (B) use of a *statement* in writing—
> > > (i) that is materially false;
> > > (ii) *respecting* the debtor's or an insider's *financial condition*;

---

[1] Haler's statements pertained to McKinney. Boyington pleaded (and it is undisputed) that McKinney is an insider of Haler.

4

No. 17-40229

> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive; . . . .

(emphasis added). Section 523(a)(2)(A) generally renders debt obtained by false pretenses, false representations, or actual fraud non-dischargeable. *See In re Bandi*, 683 F.3d at 674. But it contains an exception: if the debt is obtained by a false *oral* statement respecting financial condition, then it is dischargeable. *See id.* In contrast, a false *written* statement respecting financial condition is non-dischargeable under § 523(a)(2)(B), provided that the other conditions in this subsection are met. *See id.*

In *In re Bandi*, we held that statements respecting financial condition are "those that purport to present a picture of the debtor's overall financial health." *Id.* at 677 (quoting *Cadwell v. Joelson (In re Joelson)*, 427 F.3d 700, 714 (10th Cir. 2005)). We stated that "financial condition" meant "the general overall financial condition of an entity or individual, that is, the overall value of property and income as compared to debt and liabilities." *Id.* at 676. A representation regarding a specific asset "says nothing about the overall financial condition of the person making the representation or the ability to repay debt."[2] *Id.* "Ownership of specific assets does not mean that the assets are unencumbered or that other debts or liabilities of the owner do not exceed the value of the assets." *Id.* at 678–79. We also stated that "financial condition"

---

[2] Currently, there is a circuit split regarding whether a representation about a specific asset can qualify as a statement respecting financial condition under 11 U.S.C. § 523(a)(2). We concluded in *In re Bandi* that such a representation cannot qualify. *See* 683 F.3d at 676. The Tenth and Eighth Circuits have held the same. *See In re Joelson*, 427 F.3d at 706–07; *Rose v. Lauer (In re Lauer)*, 371 F.3d 406, 413 (8th Cir. 2004). But the Eleventh and Fourth Circuits have reached the opposite conclusion. *See Appling v. Lamar, Archer & Cofrin, LLP (In re Appling)*, 848 F.3d 953, 961 (11th Cir. 2017), *petition for cert. filed*, (Apr. 11, 2017) (No. 16-1215); *Engler v. Van Steinburg (In re Van Steinburg)*, 744 F.2d 1060, 1061 (4th Cir. 1984).

connoted the "overall net worth of an entity or individual." *Id.* at 676; *see id.* at 675 (noting that the Supreme Court had previously "seemed to equate a 'statement' about 'financial condition' with what is commonly understood as something akin to a balance sheet or bank balance" (citing *Field v. Mans*, 516 U.S. 59, 76–77 (1995))). Finally, we decided that the debtors' representations in *In re Bandi* regarding the ownership of three properties (i.e., a commercial building, a condominium development, and a residence) were not statements respecting financial condition. *Id.* at 678. Their representations fell short of conveying the debtors' net worth or "overall financial condition and consequent ability to pay." *See id.*

Haler's representations were "statement[s] respecting . . . financial condition" and therefore outside the scope of § 523(a)(2)(A). The statements at issue are (1) that McKinney was in "very fine legally [sic] financial shape" and (2) that McKinney had "plenty of cash to operate [the] business during the term that [it was] working on" the jet. These representations pertained to the overall financial strength and stability of McKinney. In its complaint filed in the bankruptcy court, Boyington stated that "Haler misrepresented the *financial strength* and capability of McKinney" (emphasis added). In its motion for partial summary judgment, Boyington again stated Haler had expressly represented "that McKinney Aerospace had the experience, competence and *financial stability* to perform the repair and restoration work" (emphasis added). Whereas the misrepresentations concerned the debtors' specific assets (i.e., the properties) in *In re Bandi, id.* at 674, Haler's representations were general and intimated that the overall value of McKinney's property and income was greater than its debt and liabilities. Thus, his statements "present[ed] a picture" of McKinney's "overall financial health," *id.* at 677 (quoting *In re Joelson*, 427 F.3d at 714).

6

No. 17-40229

Boyington argues that Haler's statements were not akin to a balance sheet or income statement and therefore did not present a picture of overall financial health. This contention is unavailing. As we noted in *In re Bandi*, a statement respecting financial condition "need not carry the formality of a balance sheet, income statement, statement of changes in financial position, or income and debt statement." *Id.* at 677 n.29 (quoting *In re Joelson*, 427 F.3d at 714). The information regarding "overall net worth or overall income flow" contained within such a statement—not the formality of the statement—is what is important. *Id.* (quoting *In re Joelson*, 427 F.3d at 714).

In sum, we conclude that Haler's statements represented that McKinney was overall financially sound. These oral representations were "statement[s] respecting . . . financial condition" and thus did not render the debt non-dischargeable under § 523(a)(2)(A).

## III.

For the foregoing reasons, we REVERSE the grant of summary judgment in favor of Boyington.