[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 19-14650

————————————————

D.C. Docket No. 9:19-cr-80081-JIC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

JULIAN GARCON,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(May 18, 2021)

Before JORDAN, JILL PRYOR, and BRANCH, Circuit Judges.

BRANCH, Circuit Judge:

Under the so-called "safety valve" provision of the First Step Act, 18 U.S.C.

§ 3553(f), district courts "shall" sentence certain convicted drug offenders with

little or no criminal history according to the United States Sentencing Guidelines "without regard to any statutory mandatory minimum sentence." Relevant here, a defendant convicted of a specified drug offense is eligible for safety valve relief only if:

> (1) the defendant does not have—
> (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;
> (B) a prior 3-point offense, as determined under the sentencing guidelines; *and*
> (C) a prior 2-point violent offense, as determined under the sentencing guidelines;

18 U.S.C. § 3553(f)(1) (emphasis added).

Julian Garcon pleaded guilty to attempted possession of 500 grams or more of cocaine with intent to distribute in violation of the Controlled Substances Act and faced a five-year statutory minimum sentence. 21 U.S.C. §§ 841(a)(1); 841(b)(1)(B)(ii); 846. At sentencing, Garcon sought safety valve relief as provided in the First Step Act, 18 U.S.C. § 3553(f)(1). The district court interpreted the "and" in § 3553(f)(1)(A)–(C) as conjunctive, meaning that Garcon was only disqualified from safety valve relief due to his prior convictions if he met all three subsections of § 3553(f)(1) or, in other words, if he had (1) more than four criminal history points, excluding any points resulting from one-point offenses; (2) a prior three-point offense; *and* (3) a prior two-point violent offense. The district court then found that Garcon was eligible for relief because he had only a prior three-

point offense, as described in § 3553(f)(1)(B). The government appealed, arguing that § 3553(f)(1) is written in the disjunctive and, thus, Garcon is ineligible for safety valve relief because he met one of the three disqualifying criteria—here, he has a prior three-point conviction. After careful review and with the benefit of oral argument, we find that, based on the text and structure of § 3553(f)(1), the "and" is disjunctive. Accordingly, we vacate Garcon's sentence and remand for resentencing.

## I.    Background

In 2019, a grand jury indicted Garcon for attempted possession of 500 grams or more of cocaine with intent to distribute. Garcon faced a five-year statutory minimum sentence. *See* 21 U.S.C. §§ 841(a)(1); 841(b)(1)(B)(ii); 846. Garcon eventually pleaded guilty and signed a plea agreement and factual proffer.

Following Garcon's guilty plea, the United States Probation Office prepared a presentence investigation report ("PSI") using the 2018 Guidelines Manual and advised that Garcon's Base Offense Level was 24 points because he possessed between 500 grams and two kilograms of cocaine. The probation office recommended in the PSI that Garcon receive a three-point reduction for timely acceptance of responsibility and providing timely notice that he would plead guilty. These reductions lowered Garcon's total offense level to 21 points. The probation office also advised in the PSI that Garcon had a criminal history category

3

of II due to a previous three-point offense for possessing a firearm as a convicted

felon. Thus, Garcon faced a recommended Guidelines sentence range of 41–51

months. However, because Garcon's charge carried a five-year statutory minimum

sentence, the Guidelines term of imprisonment was 60 months.

Garcon objected to the PSI because it did not apply the safety valve

provision under 18 U.S.C. § 3553(f).[1] Garcon argued that he was eligible for the

safety valve despite his prior three-point offense because he had less than four

---

[1] Section § 3553(f) provides that:

Notwithstanding any other provision of law, in the case of an offense under [certain federal controlled substance statutes], the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission . . . without regard to any statutory minimum sentence, if the court finds at sentencing . . . , that—

(1) the defendant does not have—
    (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;
    (B) a prior 3-point offense, as determined under the sentencing guidelines; and
    (C) a prior 2-point violent offense, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . .

criminal history points and did not have a prior two-point violent offense. Essentially, Garcon argued that the "and" in § 3553 (f)(1)(A)–(C) should be read conjunctively, meaning that anyone convicted of the specified offenses is eligible for safety valve relief unless he has all three prior-event conditions. The government responded and urged the court to read the "and" as disjunctive, disqualifying defendants who meet any one of the three prior-event criteria.

At the sentencing hearing, the district court concluded that the safety valve applied to Garcon because, under the plain meaning of the statute, "and" was used in the conjunctive. At the same time, the district court conceded that its reading would lead to an absurd result that Congress could not have intended. The government appealed.

## II.    Standard of Review

We review a district court's interpretation of a statute *de novo*. *United States v. Zuniga-Arteaga*, 681 F.3d 1220, 1223 (11th Cir. 2012).

## III.    Discussion

The sole issue in this case is one of statutory interpretation, so "we begin with the text itself." *Ga. State Conf. of the NAACP v. City of LaGrange*, 940 F.3d 627, 631 (11th Cir. 2019). We "assume that Congress used the words in the statute as they are commonly and ordinarily understood," and we read the statute to give "each of its provisions . . . full effect." *United States v. McLymont*, 45 F.3d 400,

5

401 (11th Cir. 1995) (per curiam).  "We do not look at one word or term in isolation, but instead we look to the entire statutory context." *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999).  Conversely, "[i]n construing a statute, we are obliged to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (citing *United States v. Menasche*, 348 U.S. 528, 538–539 (1955)); *In re Appling*, 848 F.3d 953, 959 (11th Cir. 2017) (citing *Reiter*, 422 U.S. at 339).  When "the language of the statute is unambiguous, we need look no further and our inquiry ends." *Ga. State Conf. of the NAACP*, 940 F.3d at 631.

The word "and" is presumed to have its ordinary, conjunctive meaning "unless the context dictates otherwise." *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1332 (11th Cir. 2005); *Peacock v. Lubbock Compress Co.*, 252 F.2d 892, 893 (5th Cir. 1958) ("But the word 'and' is not a word with a single meaning, for chameleonlike, it takes its color from its surroundings."); *cf. Encino Motorcars, LLC, v. Navarro*, 138 S. Ct. 1134, 1141 (2018) ("Unsurprisingly, statutory context can overcome the ordinary, disjunctive meaning of 'or.'").  Thus, we turn to the statutory context.

The contextual indication that the "and" in § 3553(f)(1) is disjunctive is that if the "and" is read conjunctively so that a defendant must have all three requirements before he is disqualified from the safety valve, then subsection (A)

6

would be superfluous.  If we read the "and" conjunctively, there would be no need for the requirement in (A) that a defendant must have more than four criminal history points total because, if he had (B)'s required three-point offense and (C)'s required two-point violent offense, he would automatically have more than four criminal history points.  Thus, Garcon's suggested reading violates a canon of statutory interpretation, the canon against surplusage.  "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'"  *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).  Thus, when we apply the canon, "[i]f a provision is susceptible of (1) a meaning that gives it an effect already achieved by another provision ..., and (2) another meaning that leaves both provisions with some independent operation, the latter should be preferred."  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176 (2012).  Reading the "and" in § 3553(f)(1) disjunctively avoids rendering subsection (A) superfluous and gives every part of § 3553(f)(1) meaning.  For this reason, we find that the context of § 3553(f)(1) demonstrates that the "and" is disjunctive.[2]

---

[2] The government also challenges Garcon's reading of the statute on the ground that it leads to absurd results.  We have said that on very rare occasions "courts may reach results inconsistent with the plain meaning of a statute if giving the words of a statute their plain and ordinary meaning produces a result that is not just unwise but is clearly absurd."  *CBS, Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1228 (11th Cir. 2001).  Because we conclude that

Garcon, however, argues that the structure of the statute demonstrates that the "and" is conjunctive, and a defendant is only disqualified from the safety valve if he meets all three of the subsequent conditions. Garcon reasons that because § 3553(f) employs an "eligibility checklist" and connects items (f)(4) and (f)(5) with an "and"—meaning that a defendant is eligible for the safety valve if he satisfies all five conditions—the same reading should apply to § 3553(f)(1).[3] Importantly, however, Garcon does not address the canon against surplusage, which carries the day in our analysis. Further, § 3553(f)(1) is structurally different from § 3553(f). While § 3553(f) contains a list of affirmative requirements, all of which must be met, § 3553(f)(1) contains a negative list, none of which can exist if safety-valve relief is to be granted.

Garcon also argues if this court determines the statutory language is ambiguous, we should apply the rule of lenity. "The rule of lenity is a canon of statutory construction that requires courts to construe ambiguous criminal statutes

_the plain text of the statute does not support Garcon's interpretation, however, we need not address the government's arguments about the absurdity doctrine._

_In addition, the parties raise arguments about Congress' intent allegedly gleaned from the legislative history. But the text of § 3553(f)(1) is clear and so we look no further._ United States v. Alabama, _778 F.3d 926, 939 (11th Cir. 2015) (quoting_ Harris v. Garner, _216 F.3d 970, 976 (11th Cir. 2000) (en banc));_ Merritt v. Dillard Paper Co., _120 F.3d 1181, 1185 (11th Cir. 1997) ("When the words of a statute are unambiguous, then, this first canon [of statutory construction] is also the last: judicial inquiry is complete." (quoting_ Conn. Nat'l Bank v. Germain, _503 U.S. 249, 254 (1992)) (alteration in original))._

[3] The parties agree that the "checklist" is the correct way to read § 3553 (f) but disagree as to how the "checklist" affects the interpretation of § 3553(f)(1).

8

narrowly in favor of the accused." *United States v. Watts*, 896 F.3d 1245, 1255 (11th Cir. 2018) (quoting *United States v. Wright*, 607 F.3d 708, 716 (11th Cir. 2010) (William Pryor, J., concurring)).  But the rule of lenity applies only if, "after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended." *Maracich v. Spears*, 570 U.S. 48, 76 (2013) (quoting *Barber v. Thomas*, 560 U.S. 474, 488 (2010)); *see also United States v. Brame*, 997 F.2d 1426, 1428 (11th Cir. 1993) ("The rule of lenity only serves as an aid for resolving an ambiguity, it is not an inexorable command to override common sense and evident statutory purpose.").  Grievous ambiguity does not exist here.  The text and structure of § 3553(f)(1) provide a clear meaning.  Even if there is *some* inherent ambiguity, there are multiple textual and structural arguments that yield a clear meaning, and "some statutory ambiguity . . . is not sufficient to warrant application" of the rule of lenity, "for most statutes are ambiguous to some degree." *Muscarello v. United States*, 524 U.S. 125, 138 (1998).

Garcon does not explain *how* a grievous ambiguity exists in the interpretation of § 3553(f)(1).  Rather, he states that he "is exactly the kind of defendant the amendments" to the First Step Act were intended to reach.  But we will not heed Garcon's appeal to the statute's policy and purpose via its legislative history because that would require us to overlook the clear meaning of the statutory

9

text. *See Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 969 (11th Cir. 2016) (en banc) (explaining that "[w]hen the words of a statute are unambiguous, . . . [the] judicial inquiry is complete" (quotation omitted)).

## IV.     Conclusion

For the reasons explained, we hold that the "and" in 18 U.S.C. § 3553(f)(1)(A)–(C) is disjunctive and Garcon is not eligible for safety valve relief. Accordingly, we vacate his sentence and remand for resentencing.

**VACATED AND REMANDED.**

BRANCH, Circuit Judge, concurring:

As further support to our holding that the "and" in §3553(f)(1) is disjunctive, I note that § 3553(f)(1), in providing that safety valve relief is available only if "a defendant does not have—," followed by a list of three types of prior convictions, employs a conjunctive negative proof, one of the semantic canons of statutory interpretation. "With the conjunctive negative proof, you must prove that you did not do all" of the listed things. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 120 (2012). For example, in a list that says, "[t]o be eligible, you must prove that you have not A, B, and C," the eligibility requirement is satisfied when none of the listed conditions are met. *Id*. In § 3553(f)(1), the language "does not have" applies to each subsection; accordingly, to be eligible for the safety valve a criminal defendant must not have (A), must not have (B), and must not have (C) in order to satisfy the checklist. Although § 3553(f)(1)(A)–(C) does not use the word "or," the disjunctive "and" gives the list the same meaning as if it read "the defendant does not have: more than 4 criminal history points, a prior 3-point offense, *or* a prior 2-point violent offense."

While this canon lends support for the majority's holding that the "and" in § 3553(f)(1) is disjunctive, we are mindful of Justice Alito's recent concurring opinion in *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021), in which he cautions that canons of statutory interpretation have limits: they "can help in figuring out

11

the meaning of troublesome statutory language, but if they are treated like rigid rules, they can lead us astray." *Id*. at 1175 (Alito, J., concurring). Here, we note that the conjunctive negative proof canon has only been formally considered by two other federal courts, one of which applied it to § 3553(f)(1) in the same way that we do here and reached the same result, *see United States v. Adame*, 2020 WL 5191823 at *6–7 (D. Idaho Oct. 15, 2019), and one of which applied it to a different statute and found that it should be read conjunctively. *See United States v. One 1973 Rolls Royce*, 43 F.3d 794, 815 & n.19 (3d Cir. 1994). The fact that the conjunctive negative proof canon has only been considered by courts twice does not invalidate it, but it does mean that we must ensure that our application of the canon is consistent with common English usage. As Justice Alito noted "[t]o the extent that interpretive canons accurately describe how the English language is generally used, they are useful tools." *Duguid*, 141 S. Ct. at 1175 (Alito, J., concurring). And here, we find the infrequently-used conjunctive negative proof to be such a useful tool which lends further support to the majority's reasoning.

12