TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CARINA MEDINA MORALES; SOLANYA VARGAS GONZÁLEZ<br><br>Recurrida<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO; JUNTA DE RETIRO; LUIS M. COLLAZO RODRÍGUEZ<br><br>Peticionaria | KLAN202400891 | *Apelación acogida como Certiorari*, procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2019CV06683<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Juez Brignoni Mártir y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

# RESOLUCIÓN

En San Juan, Puerto Rico, a 31 de octubre de 2024.

Este Recurso de *Certiorari* fue presentado erróneamente como Apelación el 3 de octubre de 2024 por la Junta de Retiro del Estado Libre Asociado de Puerto Rico (en adelante Junta de Retiro) y Luis M. Collazo Rodríguez, (en adelante Lcdo. Collazo) en su carácter oficial y personal, en adelante, referidos en conjunto, Recurrentes.

Nos piden que revisemos la *Resolución* dictada y notificada el 29 de julio de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "TPI"). Mediante el aludido dictamen, el TPI declaró No Ha Lugar la *Moción Conjunta Solicitando Desestimación al Amparo del Injunction Permanente Dispuesto por Ley Promesa* presentada por los recurrentes.

Contra dicha Resolución la parte recurrente presentó el 13 de agosto de 2024, *Moción Conjunta en Solicitud de*

Número Identificador

RES2024_____

*Reconsideración al Amparo de la Regla 47,* a la que se opuso la parte recurrida mediante *Oposición a Moción Conjunta en Solicitud de Reconsideración* presentada el 30 de agosto de 2024. El TPI declaró No Ha Lugar la Reconsideración mediante Resolución del 1 de septiembre de 2024, la que fue notificada el 3 de septiembre de 2024.

Inconforme, la parte recurrente presentó este recurso contra dicha Resolución, el cual atendemos como Certiorari.

**I.**

El 26 de junio de 2019, la Lcda. Carina Medina Morales (en adelante "Lcda. Medina") y la Lcda. Solanya Vargas González (en adelante "Lcda. Vargas") presentaron una demanda contra el Estado Libre Asociado de Puerto Rico, la Junta de Retiro (en adelante, "Junta") y el Lcdo. Luis M. Collazo Rodríguez (en adelante, "Lcdo. Collazo"), este último en su capacidad personal y oficial. Las demandantes alegaron que el 31 de mayo de 2019 fueron injustamente despedidas de sus puestos como Oficiales Examinadoras de la Junta de Retiro. Adujeron: 1) que fueron despedidas sin un debido proceso de ley —el cual se debió observar ya que ostentaban puestos de carrera—; 2) que sufrieron represalias al amparo de la *Ley 115 de 20 de diciembre de 1991*, 29 LPRA § 194 *et seq*.; 3) que fueron discriminadas debido a sus afiliaciones políticas, y 4) que en el caso de la Lcda. Vargas, esta sufrió discrimen por razón de edad.[1]

Durante el trámite del pleito, este Tribunal desestimó la causa de acción presentada contra el Lcdo. Collazo en su carácter personal, por entender que era de aplicación la defensa de inmunidad condicionada.[2] Al año siguiente, el caso estuvo

---

[1] Apéndice del recurso de apelación del Lcdo. Collazo, Anejo 1, pág. 1-17.
[2] KLCE202000673 (3 de febrero de 2021).

nuevamente ante nuestra consideración, y en esa ocasión se modificó el dictamen del TPI para ordenar la suspensión de la autorepresentación de las demandantes.[3]

Luego de varios trámites procesales, el 18 de julio de 2022 todas las partes presentaron sus respectivas mociones de sentencia sumaria. La Lcda. Medina y la Lcda. Vargas presentaron conjuntamente una *Moción de sentencia sumaria* donde reiteraron las alegaciones de la *Demanda*, reclamando que fueron despedidas sin un debido proceso de ley, del cual eran acreedoras por poseer puestos de carrera. Enfatizaron que, aun siendo consideradas empleadas de confianza por la Junta, tenían derecho a ser notificadas de las infracciones y a la celebración de una vista.

Por su parte, el Lcdo. Collazo adujo en su *Moción en solicitud de Sentencia Sumaria* que su puesto de Administrador no posee capacidad legal separada de la Junta de Gobierno, por tanto, procedía la desestimación de la causa de acción en su contra en su carácter oficial.

En cambio, la Junta de Retiro arguyó en su *Moción en solicitud de sentencia sumaria* que aun siendo cierto que la Junta autorizó el cambio de categoría de los puestos de oficiales examinadores de confianza a carrera, era necesario la anuencia de la Oficina de Gerencia y Presupuesto, la cual nunca se obtuvo.

El 10 de julio de 2023 el TPI emitió una *Sentencia Parcial*, donde declaró No ha lugar a la *Solicitud de Sentencia Sumaria* presentada por la Lcda. Medina y la Lcda. Vargas. Similarmente declaró No ha lugar la *Moción en solicitud de sentencia sumaria* presentada por el Lcdo. Collazo. Por otro lado, declaró con lugar de forma parcial la *Moción en solicitud de sentencia sumaria*

---

[3] KLCE202000673 (10 de febrero de 2022).

presentada por la Junta de Retiro, desestimando así las causas de acción sobre debido proceso de Ley, discrimen por razón de edad y discrimen político.

El foro inferior razonó que las demandantes no eran acreedoras de un debido proceso de ley ya que sus puestos nunca fueron reclasificados de puestos de confianza a puestos de carrera, porque además de la anuencia de la Junta de Retiro era necesario la aprobación de la Oficina de Gerencia y Presupuesto, según dicta la *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico*, Ley Núm. 66-2014, 3 LPRA § 9101, *et seq*.[4] En cuanto al discrimen político, el TPI entendió que no obraba del expediente que las demandantes hubieran presentado prueba dirigida a demostrar que fueron sustituidas por personas con ideologías políticas distintas.[5] Similarmente, se desestimó la causa de acción de discrimen por edad ya que el TPI estimó que la Lcda. Vargas no presentó prueba que permitiera activar la presunción de la *Ley Antidiscrimen de Puerto Rico*, Ley 100 de 30 de junio de 1959, 29 LPRA § 146, *et seq*.[6]

Sin embargo, el foro inferior no encontró adecuado desestimar las causas de acción de represalias y acoso u hostigamiento laboral por estimar que las partes incumplieron con colocar al tribunal en posición de evaluar conjuntamente las versiones encontradas de los hechos. Por tanto, entiende que existen hechos en controversia que impiden resolver las causas de acción por la vía sumaria.[7] El TPI tampoco procedió con la desestimación de la demanda contra el Lcdo. Collazo en su

---

[4] *Sentencia Parcial* del TPI de 10 de julio de 2023, pág. 38- 44.
[5] *Sentencia Parcial* del TPI de 10 de julio de 2023, pág. 52- 53.
[6] *Sentencia Parcial* del TPI de 10 de julio de 2023, pág. 45- 51.
[7] *Sentencia Parcial* del TPI de 10 de julio de 2023, pág. 53-56.

carácter oficial por entender que se alegan hechos realizados por Collazo, por sí mismo y en su capacidad oficial, o a través de su personal de confianza en contra de las demandantes, y que además, éste continua ejerciendo como funcionario de la Junta de Retiro.[8] El TPI fundamentó su decisión en la determinación de este Tribunal, cuando desestimamos la causa de acción en contra del Lcdo. Collazo en su carácter personal por entender que las actuaciones imputadas fueron en el desempeño de sus funciones como Administrador.[9]

Posteriormente, el Lcdo. Collazo y la Junta presentaron sus respectivas reconsideraciones el 26 de julio de 2023,[10] a las cual se opusieron las demandantes el 15 de agosto de 2023,[11] y el 18 de agosto el TPI emitió una resolución donde declaró No Ha Lugar las reconsideraciones.[12]

Inconformes con dicha *Sentencia Parcial* dictada el 10 de julio de 2023 por el TPI, que declaró No Ha Lugar la *Moción en solicitud de sentencia sumaria* presentada por el Lcdo. Luis M. Collazo Rodríguez.  Dichos recursos resultaron en los casos consolidados KLAN202300820 consolidado con KLAN202300826 que este Tribunal *confirmó* la sentencia recurrida mediante Sentencia del 31 de enero de 2024, contra la cual se recurrió al Tribunal Supremo de Puerto Rico mediante Recurso de Certiorari CC-2024-0164 sometido el 25 de marzo de 2024.

---

[8] *Sentencia Parcial* del TPI de 10 de julio de 2023, pág. 57-58.

[9] *Sentencia Parcial* del TPI de 10 de julio de 2023, pág. 57 (refiriéndose a nuestra *Sentencia* de 3 de febrero de 2021 (KLCE202000673)).

[10] Apéndice del recurso de apelación del Lcdo. Collazo, que resultó en los casos consolidados KLAN202300820 consolidado con KLAN202300826, Anejo 8, pág. 128.

[11] Apéndice del recurso de apelación del Lcdo. Collazo, que resultó en los casos consolidados KLAN202300820 consolidado con KLAN202300826, Anejo 9, pág. 134.

[12] Apéndice del recurso de apelación del Lcdo. Collazo, que resultó en los casos consolidados KLAN202300820 consolidado con KLAN202300826, Anejo 10, pág. 140.

El 22 de abril de 2024 el Tribunal Supremo decidió no expedir dicho Auto y dicha Sentencia advino final y firme.

El 21 de junio de 2024 los aquí recurrentes solicitaron al TPI la paralización y desestimación de la demanda mediante Moción Conjunta Solicitando Desestimación al Amparo del Injunction Permanente emitido por el Tribunal de Quiebras Bajo la Ley Promesa.[13]

La parte recurrida presentó Oposición a Moción Conjunta de los Demandados Solicitando Desestimación Al Amparo del Injunction Permanente Dispuesto por la Ley Promesa, ante TPI el 24 de julio de 2024.[14]

El TPI dictó *Resolución,* la que se notificó el 29 de julio de 2024. Mediante el aludido dictamen, el TPI declaró No Ha Lugar la *Moción Conjunta Solicitando Desestimación al Amparo del Injunction Permanente Dispuesto por Ley Promesa*. Luego de un trámite de reconsideración, el TPI declaró No Ha Lugar la Reconsideración mediante Resolución del 1 de septiembre de 2024, la que fue notificada el 3 de septiembre de 2024.

Así se presenta este Recurso, el 3 de octubre de 2024 por los recurrentes la Junta de Retiro del Gobierno de Puerto Rico y Luis M. Collazo Rodríguez, en su carácter oficial y personal, que aquí atendemos y en el mismo se reclaman los siguientes Señalamientos de Error:

> Primer Error: Erró el Tribunal de Primera Instancia al no desestimar las causas de acción por Acoso u Hostigamiento laboral, así como Represalias, conforme al Octavo Plan de Ajuste y su Interdicto Permanente y sobrepasar su jurisdicción al determinar tácitamente que las causas de acción constituyen "willful misconduct" y por lo tanto no son descargables.
>
> Segundo Error: Erró el Tribunal de Primera Instancia al no aplicar la doctrina de responsabilidad vicaria conforme a la jurisprudencia aplicable a casos de descargue e interdictos

---

[13] Ver Apéndice al recurso, páginas 1-13.
[14] Ver Apéndice al recurso, páginas 14-41.

permanentes en procesos de quiebra y, en consecuencia, no desestimar las alegaciones contra los demandados.

Veamos el derecho aplicable.

## II.

## A.

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. Torres González v. Zaragoza Meléndez, 211 DPR 821 (2023); McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391 (2021); 800 Ponce de León v. AIG, 205 DPR 163, 174 (2020); IG Builders et al. v. BBVAPR, 185 DPR 307, 337-338 (2012).

Contrario al recurso de apelación, la expedición o no del auto de *certiorari* solicitado descansa en la sana discreción del foro apelativo. Torres González v. Zaragoza Meléndez, *supra*; Medina Nazario v. McNeill Healthcare LLC, 194 DPR 723, 729 (2016). Así, la característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. IG Builders et al. v. BBVAPR, *supra*. En el ámbito judicial, la discreción del tribunal revisor no debe abstraerse del resto del Derecho y, por lo tanto, es una forma de razonabilidad aplicada al discernimiento judicial para así llegar a una conclusión justiciera. Mun. Caguas v. JRO Construction, 201 DPR 703, 712 (2019); IG Builders et al. v. BBVAPR, *supra*, pág. 338.

En particular, la Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, establece los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones sobre el referido recurso para la revisión de sentencias y resoluciones dictadas por el Tribunal de Primera Instancia. Rivera et al. v. Arcos Dorados et

al., 212 DPR 194, 207 (2023); McNeil Healthcare v. Mun. Las Piedras I, *supra*; Mun. De Caguas v. JRO Construction, 201 DPR 703, 709 (2019). En lo que nos atañe, esta regla dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

> Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso *Certiorari*, nuestros oficios se encuentran enmarcados en el Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B que en su Regla 40 señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *Certiorari*. Torres Martínez v. Torres Ghigliotty, 175 DPR 83, 97 (2008). La referida regla dispone lo siguiente:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

> C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Los foros de instancia ostentan un alto grado de discreción en el manejo procesal de un caso. Meléndez Vega v. Caribbean Intl. News, 151 DPR 649, 664 (2000). Como es sabido, en nuestro ordenamiento jurídico impera la norma de que un tribunal apelativo sólo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en arbitrariedad o en un craso abuso de discreción. García v. Asociación, 165 DPR 311 (2005); Meléndez Vega v. Caribbean Intl. News, *supra*, pág. 664; Lluch v. España Service Sta., 117 DPR 729 (1986); Valencia Ex Parte, 116 DPR 909 (1986). El adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414 (2013); Rivera Durán v. Banco Popular, 152 DPR 140, 155 (2000). Por ende, si no se encuentra presente en la petición ante nuestra consideración ninguno de los criterios antes transcritos y la actuación del foro primario "no está desprovista de base razonable ni perjudica derechos sustanciales de una parte, lo lógico es que prevalezca el criterio del juez de instancia a quien corresponde la dirección del proceso". Sierra v. Tribunal Superior, 81 DPR 554, 572 (1959). De manera que, solo intervendremos con el ejercicio

de dicha discreción en aquellas instancias que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. Rivera Durán v. Banco Popular, *supra*, pág. 154.

En armonía a lo anterior, sabido es que nuestro sistema judicial es adversativo y rogado, el cual descansa sobre la premisa de que las partes son los mejores guardianes de sus derechos e intereses. Bco. Bilbao v. González Zayas, 155 DPR 589, 594 (2001); SLG Llorens v. Srio. De Justicia, 152 DPR 2, 8 (2000).

Es norma reiterada en nuestro ordenamiento jurídico que, en ausencia de un craso abuso de discreción o arbitrariedad por parte del TPI, los tribunales apelativos no intervendrán con sus determinaciones interlocutorias discrecionales procesales. García v. Asociación, 165 DPR 311, 322 (2005).

**B.**

En 1984, el gobierno federal hizo varias enmiendas a la ley Federal de Quiebras y al aprobar dichas enmiendas, entre otras cosas, excluyeron a Puerto Rico (denominado en Inglés Commonwealth of Puerto Rico) de la definición de quién podía ser considerado deudor bajo el Capítulo 9 de dicha Ley Federal de quiebras.[15] De esa forma, ninguna instrumentalidad del Estado Libre Asociado de Puerto Rico (en adelante Gobierno de Puerto Rico), que estuviera en serios problemas financieros, podía acogerse a los beneficios que brinda el Capítulo 9 de la ley Federal de Quiebras, que si es aplicable a las dependencias de los gobiernos estatales o de ciertos territorios. Todo el Gobierno de Puerto Rico fue excluido de la aplicación de dicho Capítulo 9, como

---

[15] Ver 11 USC secs. 903 (1) y 101 (52).

por ejemplo, no podían ni pueden en la actualidad acogerse los Municipios ni las diferentes Instrumentalidades públicas[16] así como tampoco entidades dentro de la estructura del poder ejecutivo del gobierno de Puerto Rico.[17]

Alrededor del año fiscal 2013, tres de las principales Instrumentalidades públicas de Puerto Rico terminaron con un déficit combinado de $800 millones.[18] El ya extinto Banco Gubernamental de Fomento, que era el banco y agente fiscal del Gobierno, hasta el 2013 había logrado proveer financiamiento a dichas instrumentalidades públicas para manejar esos déficits, pero ello junto a otras operaciones nefastas, sumieron al Banco en una crisis fiscal de tal magnitud que en ese momento ya había prestado la mitad de sus activos al Gobierno de Puerto Rico y sus utilidades públicas.

Todo lo antes narrado provocó la degradación de los bonos emitidos por el Gobierno del territorio de Puerto Rico y sus instrumentalidades públicas y por ello y varios otros eventos de falta de liquidez financiera, el Gobierno de Puerto Rico aprobó legislación en 2014 que permitía al Gobierno de Puerto Rico y a las instrumentalidades públicas, reestructurar sus deudas y se llamó: Ley para el Cumplimiento de las deudas y la Recuperación de las Corporaciones Públicas, Ley 71 del 28 de junio de 2014 (13 LPRA secs. 111-113nn). Esa Ley fue declarada inconstitucional por el Tribunal Supremo de los Estados Unidos en la Opinión que se conoce como el caso Franklin.[19] Allí se resolvió que, para propósitos de la Ley Federal de Quiebras, al territorio de Puerto

---

[16] Ver 105 DPR 437 (1976).
[17] Ver 11 USC secs. 101 (52) y 903 (1)
[18] Ver Commonwealth of Puerto Rico Et. Al v Franklin California Tax – Free Trust Et. Al., 579 US 115 (2016), opinión del Tribunal Supremo de los Estados Unidos, del 13 de junio de 2016.
[19] Id.

Rico le aplica la definición de estado de dicha ley Federal y por el principio de campo ocupado que se aplica en esa la ley federal de quiebras, no se puede aprobar en el territorio de Puerto Rico una ley de quiebras que supla aquello que no le incluye la Ley Federal a la que antes hemos hecho referencia.

El gobierno de Puerto Rico admitió públicamente, luego del año 2013,[20] que no tenía capacidad para seguir pagando sus deudas con los acreedores que le habían comprado bonos para financiar diversas obras.

Ello provocó una revisión profunda de las finanzas del Gobierno de Puerto Rico y entre ellas se evaluaron las finanzas de la Junta de Retiro y todo el gobierno del territorio. Así ocurrió la aprobación de la ley Federal, PROMESA por el Congreso Federal.

El Congreso Federal, amparándose en la Sección 3, Artículo IV de la Constitución federal (Cláusula para administrar territorios, también conocida como Cláusula de Territorios, que faculta al Congreso a elaborar todas las normas y reglamentos necesarios respecto al territorio u otra propiedad perteneciente a los Estados Unidos), aprobó dicha ley federal, (Public Law 114-187 el 30 de junio de 2016, Puerto Rico Oversight, Management, and Economic Stability Act or PROMESA), conocida como "PROMESA", la cual entró en vigor el mismo 30 de junio de 2016. Entre las entidades cubiertas por PROMESA se encuentra el Gobierno de Puerto Rico y varias de sus entidades.[21] El propósito de dicha legislación fue brindar al gobierno de Puerto Rico y sus agencias e instrumentalidades acceso a los procesos judiciales de reestructuración de deuda.

---

[20] Véase, Periódico Primera Hora el 2 de abril de 2013; Reuters y Associated Press, 30 de diciembre de 2015 y CNN Business, 1 de julio de 2016.
[21] Financial Oversight and Management Board. *Covered Entities,* http://www.juntagobierno.upr.edu/wp/content/uploads/sites/16/2017/03/PROMESA_Covered_Entities_List.pdf.

El 30 de septiembre de 2016, la Junta de Supervisión Fiscal (en adelante "la Junta"), organismo creado en la Ley PROMESA, adscrito al gobierno del Territorio, designó al gobierno de Puerto Rico y en particular a la Junta de Retiro como una entidad del territorio sujeta a los requisitos de PROMESA.[22]

El pasado 3 de mayo de 2017, ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, amparándose en las disposiciones del Título III, de la Ley PROMESA, *supra,* se presentó el caso que colocó a Puerto Rico y varias de sus corporaciones públicas bajo la protección de PROMESA, *supra*.

La Ley PROMESA, es considerada de naturaleza "sui generis." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 32 F.4th 67, 78 (2022); *Peaje Invs. LLC v. García-Padilla*, 845 F.3d 505, 513 (1st Cir. 2017).

El Título I de la Ley PROMESA provee el establecimiento de una Junta de Supervisión y Administración Financiera, (Financial Oversight and Management Board), la Junta, con el propósito de proveer un método para que un territorio cubierto pueda lograr la responsabilidad fiscal y acceder a los mercados de capital. Véase Sección 101 (a) de PROMESA, 48 USC sec. 2121.

Una de las responsabilidades que PROMESA le delegó a la Junta fue desarrollar planes fiscales para el Gobierno de Puerto Rico y sus instrumentalidades, con el propósito de proveer un método de responsabilidad fiscal y acceso al mercado de capital. *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 32 F.4th 67, 74 (1st Cir. 2022).

---

[22] Ver 48 USC secs. 2101, et seq.

El Titulo III de PROMESA permite que ciertas entidades del Gobierno de Puerto Rico denominadas "covered entities" puedan hacer una petición de quiebra por conducto de la Junta.

El 9 de octubre de 2019, el Tribunal de Quiebras que regía y aún rige casos existentes, de los presentados bajo ley PROMESA, dictó una orden por la que concedió a la Junta, la administración conjunta de los casos Título III únicamente con fines procesales, A tales efectos las siguientes entidades se convirtieron en los deudores bajo los Casos de Título III, junto con el respectivo número de caso de Título III y sus últimos cuatro (4) dígitos del número de identificación contributiva federal según se detalla adelante:

…

iv) El Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Número 17 BK 3566-LTS) (últimos cuatro dígitos de la identificación contributiva federal: 9686);

Como consecuencia del plan de reorganización, el 14 de enero de 2022, la Junta radicó (en nombre del ELA, del SER y de la AEP) el *Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* (el "Octavo Plan Enmendado", denominado, el "Plan" o "Plan de Ajuste").[23] Luego que el Tribunal de Quiebras emitiera una Orden de Confirmación del Plan, el plan entró en vigor el 15 de marzo de 2022. Dicho plan tiene un alcance amplio y general, aplicándose a todas las reclamaciones anteriores a la fecha de efectividad y aquellas posteriores para las que no se haya presentado a tiempo un "Proof of Claim".

---

[23] Véase, Documento #19784 del caso de quiebra número 17-03283-LTS.

A la Ley PROMESA se le incorporó una sección 301[24] en la que se establecen las disposiciones concernientes a las paralizaciones automáticas que provee el Código de Quiebras.[25] Al amparo de las citadas secciones de la Ley PROMESA, una vez alguna de las entidades cubiertas hiciera su petición de quiebra ante el Tribunal de los Estados Unidos para el Distrito de Puerto Rico, se activaría una paralización sobre todas las acciones civiles, administrativas o de otra índole que se intentaran iniciar o se hubieran iniciado contra la entidad que presentó la solicitud de quiebra, salvo que el Tribunal de Distrito entendiera prudente extender la protección a otros codemandados en el pleito.

El Tribunal Supremo de Puerto Rico, en opinión *Dpto. de Hacienda v COTIARI*, 203 DPR 1031 (2020) expresó sobre la existencia de circunstancias exentas de la paralización automática lo siguiente:

…, este Foro ha reconocido unánimemente la jurisdicción concurrente de nuestros tribunales locales para examinar si un pleito está efectivamente paralizado en virtud del Título III de la Ley PROMESA. (citas omitidas)

En dicho caso, *Dpto. de Hacienda v COTIARI,* supra, se ha instruido a los tribunales respecto al ejercicio o no de la "jurisdicción concurrente para conocer inicialmente si un pleito está o no paralizado según el Título III de la Ley PROMESA implica, por sus propios términos, el deber de tomar en cuenta *todas* las circunstancias puestas a su conocimiento que puedan incidir en su determinación."

El objetivo principal de la paralización es liberar al deudor de presiones financieras mientras se dilucida el procedimiento de

---

[24] 48 USC sec. 2161.
[25] 11 USC secs. 362(a), 922(a).

quiebra. *Lacourt Martínez v. JLBP et al,* 198 DPR 786 (2017). Con la paralización se impide, entre otras cosas, el comienzo o la continuación de cualquier proceso judicial, administrativo o de otra índole, que fue o pudo haber sido interpuesto en contra del deudor, o para ejercitar cualquier acción cuyo derecho nació antes de que se iniciara la quiebra. Peerless Oil v. Hnos. Torres Pérez, 186 DPR 239, 255 (2012); Marrero Rosado v. Marrero Rosado, 178 DPR 476, 491 (2010); 11 USC sec. 362.

Ahora bien, el 18 de enero de 2022 la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico confirmó el Plan de Ajuste Fiscal que presentó el Gobierno de Puerto Rico y que fue certificado por la Junta de Supervisión Fiscal[26]. Conforme a ello, se fijó el 15 de marzo de 2022 como fecha de efectividad de referido Plan de Ajuste.

El interdicto tiene el efecto de paralizar desde y después de la fecha de efectividad del Plan de Ajuste, el inicio o continuación, directa o indirectamente o en cualquier modo, una acción o procedimiento, ya sea judicial, administrativo o mediante arbitraje o cualquier otro proceso sobre reclamaciones pasadas, presentes y futuras contra el Estado mientras dure el proceso de quiebra, sujeto a ciertas excepciones que se deben evaluar caso a caso.

La Sección 1.135 del Plan de Ajuste de la Deuda establece que un *claim* es:

> *Any right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured,*

---

[26] *Order and Judgment Confirming Modified Eight Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority*.

> *disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, Causes of Action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise.*

Resulta importante destacar que quedaron resguardados por el *injunction* permanente "[a]ny agency, department, office, public corporation, trust, fund, system, instrumentality, political subdivision, taxing authority, or municipality of the Government of Puerto Rico." Sin embargo, la Sección 1.277 del Plan de Ajuste de la Deuda expresamente establece que:

> **"Government Released Claims" shall not include any and all rights, privileges, Claims, demands, liabilities, or Causes of Action of any and every kind, character or nature whatsoever** (a) against (i) the Debtors (or their successors, including Reorganized Commonwealth) or COFINA arising from or relating to the Debtors' obligations pursuant to the Plan or the securities to be issued pursuant to the Plan or that were issued pursuant to the COFINA Plan, or (ii) a Government Releasee unrelated to the Debtors or the Claims discharged pursuant to the terms and provisions of the Plan**, (b) arising from or related to any act or omission that constitutes intentional fraud or willful misconduct** or (c) arising from or related to claims or bonds issued, or contracts or leases entered into, by AFICA, CCDA, HTA, MBA, MFA, PFC, PRASA, PRIDCO, PRIFA, UPR and PREPA, other than CW/Convention Center Claims, CW/HTA Claims, CW/MBA Claims, CW/PRIFA Rum Tax Claims, and the CW Appropriations Claims. (Énfasis suplido).

Además, la Sección 1.421 del Plan de Ajuste de la Deuda expresamente dispone, en lo pertinente, que no se deben considerar descargadas las causas de acciones o reclamaciones por negligencia crasa, conducta dolosa o fraude intencional. Es decir:

> **"Released Claims" is not intended to include, nor shall it have the effect of including, Claims or Causes of Action unrelated to the Debtors or Claims or Causes of Action for gross negligence, willful misconduct or intentional fraud asserted**, or that could have been asserted, whether sounding in contract or tort.[27] (Énfasis suplido).

---

[27] *Íd*. pág. 311.

El inciso 60 del *Confirmation Order* contiene un interdicto sobre cualquiera de los *released claims* descargadas en virtud de la Sección 92.5 del Plan de Ajuste de la Deuda y el inciso 57 del *Confirmation Order*. Específicamente, la Sección 92.5 del Plan de Ajuste de la Deuda y el inciso 57 del *Confirmation Order* eximieron las *released claims* de los "Debtors, Reorganized Debtors, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit" en contra de cualquier parte liberada.

Las reclamaciones por fraude o falsas representaciones, en la Ley PROMESA no fueron incorporadas como parte de las excepciones para el descargue.

## III.

Los dos errores planteados han sido discutidos por las partes de manera conjunta y también así los discutiremos aquí.

La Demanda ante nuestra consideración fue presentada el 26 de junio de 2019, es decir, en una fecha posterior a la petición de quiebra del 21 de mayo de 2017. Conforme con las disposiciones del Plan que entró en vigor el 15 de marzo de 2022, se instituyó la figura del interdicto permanente ("Injunction on Claims") que aquí evaluamos si detiene o no las reclamaciones contra las que se recurren. No hay controversia que este caso se radicó posterior a la fecha de la petición de quiebra bajo PROMESA. En su parte pertinente, el párrafo 59 de la Orden de Confirmación dispone:

> Except as otherwise expressly provided in section 92.11 of the Plan, this Confirmation Order, or such other Final Order of the Title III Court that is applicable, all Entities who have held, hold, or in the future hold Claims or any other debt or liability that is discharged or released pursuant to section 92.2 of the Plan or who have held, hold, or in the future hold Claims or any other debt or liability discharged or released pursuant to section 92.2 of the Plan are permanently enjoined, from and after the

Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim or other debt or liability discharged pursuant to the Plan... against any of the Released Parties or any of their respective assets or property Confirmation Order...

De conformidad con el interdicto permanente antes mencionado hay que tomar en cuenta toda información disponible para ver si le aplica a este caso la paralización inmediata que se contempla en PROMESA. El Plan de Ajuste, dispone que el "Confirmation Order" constituirá una determinación judicial a partir de su fecha de efectividad.  Por consiguiente, a partir de ese momento, los deudores a los que les aplique, quedarán liberados y las reclamaciones de estos, descargadas.

El caso que aquí atendemos, reclama que no les aplica la paralización, pues alegan que imputan actuaciones que son "willful misconduct".

Estamos en una etapa del caso que lo reclamado por los peticionarios conlleva una interpretación en estricto derecho.  Las aquí apeladas, Lcda. Medina y Lcda. Vargas, presentaron una demanda por daños y perjuicios ante el Tribunal de Primera Instancia, Sala Superior de San Juan, el 26 de junio de 2019, por despidos ocurridos el 31 de mayo de 2019. En esa demanda se reclama por esos despidos, de la cual subsiste, entre otras cosas, los reclamos de que en los despidos medió represalias, lo que deberá dilucidarse en juicio.

En este caso, desde la Sentencia Parcial emitida por este foro en el caso KLAN202300820 consolidado con KLAN202300826 se *confirmó* la sentencia recurrida mediante Sentencia del 31 de enero de 2024, contra la cual se recurrió al Tribunal Supremo de Puerto Rico mediante Recurso de Certiorari CC-2024-0164

sometido el 25 de marzo de 2024. El 22 de abril de 2024 el Tribunal Supremo decidió no expedir dicho Auto y dicha Sentencia advino final y firme.

Con ello ya existe un dictamen judicial que encontró que debía dirimirse en juicio si el despido ocurrió como represalia, según se alega en la demanda que tiene ante si el TPI. Ante ello tenemos unas alegaciones de Represalias contra los recurrentes, que deben adjudicarse en un juicio en sus méritos y ello implica, sin adjudicarse hasta que se ventile el juicio en sus méritos, que ese reclamo de represalias superó el crisol de una solicitud de sentencia sumaria. Ese dictamen judicial que es final y firme, nos obliga a concluir que ese reclamo de represalia cae en las reclamaciones de "willful misconduct" que no son descargables y por ello no procede expedir el auto de certiorari solicitado.

## IV.

Por los fundamentos ante expuestos, ***denegamos*** expedir el Auto solicitado contra la *Resolución* emitida por el TPI.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.  La Juez Brignoni Mártir concurre sin opinión escrita.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones